HAMMOND, Respondent, vs. CAPITAL CITY MUTUAL FIRE IN-SURANCE COMPANY, Appellant.

*October 9—October 29, 1912.*

*Fire insurance: Latent ambiguity in policy: Parol evidence of nego-tiations: Partnership and individual property.*

1. Where, upon applying a writing to the subject matter to which it relates, a latent ambiguity appears therein, parol testimony of the facts and circumstances surrounding its execution, in-cluding conversations and negotiations between the parties, may be received to solve the ambiguity.

2. A policy insured "Hammond Bros." against loss or damage by fire to "household goods"—including specifically, among other things, household furniture, family wearing apparel, family stores and supplies, watches and jewelry in use,—located in a building occupied by assured as a hotel and saloon. It appear-ing that two brothers carried on a partnership business under the firm name of Hammond Bros. and had partnership prop-erty in such building, and that each had individual property therein, there was a latent ambiguity in the policy as to whose property was insured under the term "Hammond Bros.," and parol evidence was properly admitted to show that, in a con-versation between one of the brothers and the agent of the in-surer prior to the delivery of the policy, it was agreed and un-derstood that the insurance should cover the individual prop-erty of each partner as well as the partnership property.

APPEAL from a judgment of the circuit court for Marquette county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action upon a fire insurance policy. It appears that the defendant company sometime in October or about the 1st of November, 1909, took over the business of another insurance company known as the Poynette Mutual Fire Insurance Company and issued new policies to its members. About November 1, 1909, it delivered to plaintiff a Wisconsin standard form policy reciting that defendant "in consideration of the stipulations herein named and $4.38 premium does insure Hammond Bros., of Westfield, Wisconsin, from the 1st day of November, 1909, at noon, to the 20th day of July, 1911, at noon, against all direct loss or damage by fire and lightning, except as hereinafter provided, to an amount not exceeding $700, to the following described property while located and contained as described herein and not elsewhere, to wit, $700 on household goods as per form attached, all while contained in the two-story composition and gravel, cement block building situated on lot 1, block 'C' in the village of Westfield, Wisconsin, occupied by assured as a hotel and saloon." The rider attached was as follows:

"On household furniture and utensils, useful and ornamental, including beds, bedding, linen, family wearing apparel and materials for same, plate, plated ware, printed books and music, musical instruments (excepting pianos and organs), mirrors, portraits, pictures, paintings, engravings and their frames (no picture, painting nor engraving to be valued at more than cost), watches and jewelry in use, fishing tackle, firearms, sewing machines, trunks, umbrellas, fuel, family stores and supplies, all while contained in the above described building."

This policy was issued upon an application presented to the Poynette Mutual Fire Insurance Company in which the words printed thereon, to wit, "household goods, piano or organ," were stricken out by crosses made with a pen, and the words "hotel furn. & fix." inserted by pen in place thereof. In the rider attached to the Poynette policy describing the property the word "household" was stricken out by a pen line drawn

through the same and the word "hotel" written in place thereof, so that it read: "$700 on hotel furniture and utensils," etc.

The complaint alleged that the defendant, by virtue of the terms and conditions of the policy described, insured the property of the plaintiff, which was destroyed, with other property belonging to the plaintiff and his co-insured, Zera Hammond, in addition to the joint property of the said plaintiff and the said Zera Hammond, so that the policy covered the individual property of the plaintiff, the individual property of his brother, Zera Hammond, and the partnership property of Hammond Bros. It further alleged that the defendant, previous to the issuance of the policy, was informed of the separate ownership of the property contained in the building described, and that it was specifically agreed between defendant and plaintiff and Hammond Bros. and Zera Hammond that the policy of insurance should cover the individual property of each of the partners as well as the partnership property, and that it was further distinctly understood and agreed by and between the plaintiff herein and said Zera Hammond and said copartnership of Hammond Bros. that all of said property in said hotel building so described, referred to in said policy and covered thereby, should be described and insured as the property of Hammond Bros.

The answer denied any liability to the plaintiff upon any cause of action and alleged that the defendant, on or about November 1, 1909, issued and delivered its policy of insurance to Hammond Bros., wherein and whereby it did insure the property of Hammond Bros. only, and it specifically denied that said policy by its terms covered any individual property belonging to the plaintiff or his copartner. It further alleged that the policy was executed and received by said Hammond Bros. on or about the day of its issue, and retained by said Hammond Bros. without any objection being raised by them or either of the individuals that composed the firm of Hammond Bros.

The jury by a special verdict found (1) that Johnson (the agent of defendant) and *Philo Hammond* (the plaintiff) had a conversation prior to the delivery of the policy in suit relative to insurance with the defendant company; (2) that it was agreed at said time that a policy would be taken in the defendant company; (3) that Johnson and *Philo Hammond* both intended and understood at said time that the partnership property of Hammond Bros. and the individual property of each partner situated in the building was all to be insured by said policy; (4) that Johnson knew at said time that part of the property in the building intended to be insured belonged to the partnership of Hammond Bros. and part to the partners individually; and (5) that the actual value of the property destroyed by fire was $400.

On such verdict the court entered judgment in favor of the plaintiff, from which the defendant appealed.

For the appellant there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

For the respondent there was a brief by *D. W. McNamara* and *Anna B. Hull,* and oral argument by *Anna B. Hull.*

VINJE, J. The principal error assigned is that the plaintiff was allowed, against objection by defendant, to testify as to the substance of conversations had between himself and defendant's agent, Johnson, previous to the issuance of the policy, wherein the different ownerships of the property contained in the hotel building was claimed to have been disclosed to Johnson and the property pointed out to him, and wherein, plaintiff testified, it was expressly agreed that the policy to be written should cover his individual property, the individual property of his brother, Zera Hammond, and the partnership property. The policy insured Hammond Bros. It appeared that in the building described in the policy the plaintiff and his brother, Zera Hammond, carried on a partnership business known as Hammond Bros., and had partnership property therein; that plaintiff and his brother each also had in-

dividual property therein, and the question arises, What is the meaning of the term "Hammond Bros." as used in the policy? Is it descriptive of the brothers Zera and *Philo Hammond,* or is it used to designate the partnership? If the latter, then it would exclude individual property. If the former, it would include individual as well as partnership property. *Castner v. Farmers' Mut. F. Ins. Co.* 46 Mich. 17, 8 N. W. 554; *Foster v. U. S. Ins. Co.* 11 Pick. 85; *Lenagh v. Commercial Union Assur. Co.* 77 Neb. 649, 110 N. W. 740; *Peck v. New London Co. Mut. Ins. Co.* 22 Conn. 575. See, also, *Siemers v. Meeme Mut. H. P. Ins. Co.* 143 Wis. 114, 126 N. W. 669, and cases cited. The ambiguity in the term became apparent when by extrinsic evidence it was made to appear that the building in which the insured property was located contained property owned individually and also property owned by the partnership. Such ambiguity was emphasized by the term "household" furniture, used in the policy in question, instead of the term "hotel" furniture, used in the superseded policy, and also by the terms "family wearing apparel," "family stores and supplies," "watches," "jewelry," etc., presumably not owned by a partnership in the hotel and saloon business. So it appears that the trial court was correct in holding that upon the facts disclosed there was a latent ambiguity in the contract of insurance, viz., Whose property was insured under the term "Hammond Bros."? To solve such ambiguity he permitted plaintiff to testify to what was said upon that subject by the parties at the time the contract was entered into, for the purpose of ascertaining in what sense they used the term "Hammond Bros.," whether as descriptive of the persons Zera and *Philo Hammond* or as designating the partnership. Was the reception of such testimony error? The rule is elementary that parol testimony is not admissible to contradict, vary, add to, or take from the terms of a valid written instrument. 1 Greenl. Ev. (15th ed.) § 275; 2 Taylor, Ev. (10th ed.) § 1132; Jones, Ev. (2d ed.) § 434 (437–439).

But when, upon applying the writing to the subject matter to which it relates, a latent ambiguity appears therein, then parol testimony of the facts and circumstances surrounding its execution may be received to solve the ambiguity. Jones, Ev. (2d ed.) § 453 (458, 459). Such testimony neither contradicts, varies, adds to, nor takes away from the writing. It merely aids in determining the true meaning thereof. *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43. The meaning so arrived at must not be inconsistent with the language of the writing, but it may limit such language to a particular meaning which is included therein, and exclude another meaning which the language may also bear. The office of such testimony is, within the meaning of the terms employed in the writing, to render certain that which is uncertain, and to determine just what in fact the writing was intended to express. *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661. That such ambiguity may be solved by parol proof of extrinsic facts and circumstances surrounding the execution of the writing is the general doctrine announced by text-writers and courts alike. 1 Greenl. Ev. (15th ed.) § 297; Jones, Ev. (2d ed.) § 453 (458, 459). That parol proof of conversations or negotiations had between the parties at the time of the execution of the writing which serves to construe a latent ambiguity therein is also admissible, is established by both early and late decisions of our court. *Ganson v. Madigan,* 15 Wis. 144; *Becker v. Holm,* 89 Wis. 86, 61 N. W. 307; *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 89 N. W. 483; *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43; *Pedelty v. Wis. Zinc Co.* 148 Wis. 245, 134 N. W. 356. True, a number of cases may be found in which language to the contrary is used in the opinions, and also a few cases in which a decision has been made not in harmony with the rule here announced. But no good ground is perceived why parol proof of such conversations

or negotiations is not admissible to solve a latent ambiguity in a writing, thus enabling the court to determine upon what precise subject matter the minds of the parties met. Nothing in the writing is thereby contradicted, nothing subtracted, and nothing added. The meaning read out of the writing in the light of such parol proof must be included therein; that is, the language used must be susceptible of the construction which the parol testimony tends to support. The conversations or negotiations are resorted to merely for the purpose of ascertaining the actual meaning ascribed to the ambiguous term by the parties themselves when the writing was executed. Such conversations or negotiations, therefore, become in a sense characterizing circumstances surrounding the execution of the writing, as expressed in *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43, and *Pedelty v. Wis. Zinc Co.* 148 Wis. 245, 134 N. W. 356, and serve to show what the writing meant when it was made and what it now in fact means, as expressed in *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631. So we conclude there was no error in the reception of the testimony to which objection was made.

It is urged that since the policy was retained by plaintiff for a period of more than fourteen months without making any objection to the term describing the assured, the written contract is conclusively presumed to represent the actual agreement. Both the trial court and this court have so treated the policy. It is held to represent the actual contract made, and in order to determine what that contract was and is, as written, the testimony which aided in rendering certain the meaning of the term "Hammond Bros." was received.

Error is also assigned because the evidence does not support the first finding of the jury, and because the court refused to set aside findings 2, 3, and 4. A careful examination and consideration of the evidence does not convince us that the assignment of error is well taken.

*By the Court.*—Judgment affirmed.