# CASES DETERMINED

# August Term, 1920.

---

H. H. CAMP COMPANY, Respondent, vs. PABST BREWING COMPANY, imp., Appellant.

*January 16—September 25, 1920.*

*Landlord and tenant: Assignment of lease as security for advances: Covenant by assignee to pay rent: Eviction to mitigate damages: Parol evidence.*

1. A brewing company making advances to saloon-keepers and taking as security an assignment of their lease, and, to procure the consent of the landlord to the assignment, agreeing in writing "to perform all the terms . . . of said lease," is presently liable for the rent.
2. The agreement being clear and unambiguous upon its face and as applied to the subject matter, there is no room for construction nor for oral testimony to show the intent of the parties in entering into it.
3. The landlord is under no obligation to mitigate damages in behalf of those liable for the rent by evicting the tenant and reletting the premises.

OWEN, SIEBECKER, and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Affirmed.*

Action to recover taxes and rent accruing under a lease made by plaintiff to Weber & Stuber and under a written agreement on the part of the *Pabst Brewing Company* to perform all the terms, covenants, conditions, and agreements of the lease. Plaintiff dealt in real estate and rentals

and had a ninety-nine-year lease on the premises occupied by Weber & Stuber, who for many years past had conducted a saloon therein under a contract with the *Pabst Brewing Company* that its beer should be sold there to the exclusion of all other domestic draft beers. As to such premises the *Pabst Brewing Company* has had a similar contract since 1874. In 1915 Weber &. Stuber's lease expired and they entered into a new lease for ten years and agreed to pay rent and taxes and to make certain improvements. They found the cost of the improvements beyond their means and applied to the *Pabst Brewing Company* for advances, which were made on condition that Weber & Stuber should pay an increased price per barrel for beer, the increase to be in payment of the advances made. A written agreement was entered into between Weber & Stuber and the *Pabst Brewing Company* to the effect that if Weber & Stuber breached their contract with the *Pabst Brewing Company* it should be entitled to immediate possession of the leased premises. In the meantime Weber & Stuber were to remain in possession. The lease between plaintiff and Weber & Stuber provided that the premises should not be sublet without the consent of the lessor. The *Pabst Brewing Company*, to secure itself on its agreement with Weber & Stuber, obtained from them an assignment of their lease, but in order to secure the benefit of such assignment it was necessary to get plaintiff's consent thereto. In order to secure such consent they executed this agreement: "The said *Pabst Brewing Company* hereby agrees to perform all the terms, covenants, conditions, and agreements of said lease to be performed by the said lessees therein." This agreement was written into the assignment of the lease under the signatures of Weber & Stuber and above the written consent of plaintiff. Weber & Stuber at no time defaulted in their contract with the *Pabst Brewing Company* and the latter at no time entered into possession of the premises. Weber & Stuber remained in possession until about July 1, 1919, and paid rent to plaint-

iff until about January 1, 1917. The amount due under the lease for rentals, taxes, and interest was $16,891.67, and for such amount judgment was entered against Weber & Stuber and the *Pabst Brewing Company.* The latter appealed from the judgment.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *William C. Quarles* and *Henry W. Stark,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. William C. Quarles* and *Mr. Stark.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *James B. Blake* and *Paul. W. Newcomb,* all of Milwaukee.

The following opinion was filed July 3, 1920:

VINJE, J. Appellant assigns as error (1) the conclusion of the court that it became presently rather than conditionally liable for the performance of the terms of the lease in view of the contracts between the parties; (2) the refusal to receive parol testimony in determining the object of the parties in executing and receiving its agreement to perform the terms of the lease and in showing the real nature of the transaction; and (3) in refusing to hold it was the duty of plaintiff to mitigate its damages by evicting Weber & Stuber in 1917, and reletting the premises at the best rent obtainable.

We do not deem it advisable in this opinion to treat the arguments of counsel as to many phases of the case, because we deem the plain terms of the written agreement of the parties and their conduct under such agreement determine the vital question in the case. The trial court concluded that the written agreement of the *Pabst Brewing Company,* set out in the statement of facts, created a present contract between it and plaintiff enforceable at once in case Weber & Stuber breached any of the terms of the lease, and did not constitute a conditional relation establishing merely privity of estate in case the *Pabst Brewing Company* should take

possession under the lease, as claimed by appellant. We think the circuit court reached the correct conclusion for these reasons: first, the plain import of the language of the agreement is to that effect; second, the relation of the parties under their contracts made such an agreement a reasonable one; third, the parties so construed it; and fourth, the agreement would be meaningless construed as appellant claims it should be.

Very little can advantageously be added by way of argument to the first reason assigned. The language is plain, simple, and direct to the effect that the *Pabst Brewing Company* will perform all the terms, covenants, conditions, and agreements of the lease to be performed by the lessees. The obligation to perform is specific, is not contingent upon any future condition such as possession, but is absolute *in præsenti* and couched in language that includes any breach by the lessees. The *Pabst Brewing Company* agreed to see that from the time of the signature of that agreement the terms of the lease would be met by the lessees or itself.

As to the second reason, it is true that plaintiff had already made its lease to Weber & Stuber and in doing so had relied upon their credit. But they were to make substantial improvements, and when the agreement was signed it was apparent that Weber & Stuber could not make such improvements without financial aid from some one. A different situation then presented itself from what obtained when the lease was first made. The *Pabst Brewing Company* was interested in the location and in Weber & Stuber, and it was natural that plaintiff should want to get additional security for its lease. This it could and did do by requiring the *Pabst Brewing Company* to enter into its written agreements as a condition of its consent to the assignment of the lease. Of course it was not contemplated by any of the three parties at the time the consent was given that it was likely that Weber & Stuber would breach their contract with the *Pabst Brewing Company* and thus allow or compel it to take pos-

session of the premises. That was a mere contingency that the *Pabst Brewing Company* wished to guard itself against by securing consent to the assignment of the lease. As a consideration for such consent on plaintiff's part the *Pabst Brewing Company* assumed the obligations of the lease, thinking no doubt that it would be, as perhaps it was, reimbursed by the exclusive sale of its domestic draft beer by Weber & Stuber. In short, plaintiff wished to make itself more secure, and the *Pabst Brewing Company* agreed to secure it believing it was for its interest to do so and that in the end it could give such security without cost to itself.

The agreement in question was executed in December, 1914. In March, 1916, the plaintiff wrote the *Pabst Brewing Company* that the lessees were in default, setting out the provisions of the lease as to the payment of taxes and rents and informing the *Pabst Brewing Company* that the total amount in arrears was $1,744.03 and interest, and closed the letter thus: "Under the circumstances we feel compelled to direct your attention to the situation covering the defaults which have occurred under the terms of the lease, and request that you arrange for an adjustment of the matter at your early convenience." In reply the *Pabst Brewing Company* stated that it had had an interview with Weber & Stuber and had agreed to assist them in installing a bookkeeping system that would no doubt materially help them in checking their accounts, and that Weber & Stuber had agreed to make arrangements for the payment of taxes and back rent, and closed by saying: "Please keep us posted on any further developments in the premises, and you can rest assured that all matters will receive our prompt attention." No analysis of this correspondence is necessary to disclose the fact that plaintiff claimed the *Pabst Brewing Company* was liable for the defaults and that the *Pabst Brewing Company* admitted it was. Otherwise why should it wish to be kept posted as to a contract relation between plaintiff and Weber & Stuber in which it was not interested.

It was not until a year later, after it had consulted counsel, that it denied liability.

The agreement, unless construed as the circuit court construed it, namely, creating an immediate privity of contract, would be meaningless. If the *Pabst Brewing Company* entered under the lease a privity of estate would at once exist between it and the landlord, and it would under such privity of estate be bound to perform the lease as to rents and taxes accruing under its occupancy. No written agreement to that effect would be necessary. If it be claimed the agreement entered into would compel the *Pabst Brewing Company* to pay up all arrears in rents and taxes only in case it took possession under the lease, a sufficient answer is that the agreement does not so provide. It is not, as before stated, made upon any condition whatever as to the *Pabst Brewing Company* except that there be a breach by the lessees, Weber & Stuber, in which event the liability of the *Pabst Brewing Company* is absolute. Many cases have been cited by counsel on both sides bearing upon collateral questions. We do not deem them of much importance because we base our decision upon the plain language of the agreement, and hold that it creates a present contract relation, specific and unambiguous both upon its face and as applied to the surrounding circumstances; and was so understood by the parties, as is shown by the correspondence referred to above. Rights and liabilities resulting from the relation of privity of estate do not arise in this case and are therefore not discussed.

Since the contract is clear and unambiguous upon its face and as applied to the subject matter, there is no room for construction nor for oral testimony to show the intent of the parties in entering into it. *Hammond v. Capital City Mut. F. Ins. Co.* 151 Wis. 62, 138 N. W. 92. The trial court's refusal to receive such testimony was therefore proper.

A landlord is under no obligation to mitigate damages by

evicting the tenant and reletting the premises. In most jurisdictions it is held that even if the tenant abandons the premises he is under no obligation to re-enter and relet; that he can stand upon the terms of the lease and recover rent for the whole term. 24 Cyc. 1164; 16 Ruling Case Law, 669 and cases cited. It is not here necessary to hold more than that the landlord is not required to evict the tenant to mitigate damages in behalf of those liable for the rent.

*By the Court.*—Judgment affirmed.

The following opinion was filed July 7, 1920:

OWEN, J. (*dissenting*). The majority opinion construes the language upon which the liability of the *Pabst Brewing Company* is predicated as an obligation in the nature of an original undertaking on its part to pay the rent of Weber & Stuber from the date of the assignment of the lease. With this construction I cannot agree.

A consideration of the setting in which this agreement is found, the transaction of which it forms a part, the relation of the parties and their subsequent dealings, conclusively demonstrates to my mind that no such result was intended to be accomplished.

In 1915 the plaintiff executed to Weber & Stuber a new lease, running for ten years, by the terms of which the latter agreed to make certain improvements upon the premises. It transpired that these improvements would be much more expensive than was contemplated, and it was necessary for Weber & Stuber to make financial arrangements in order to comply with this provision of the lease. They appealed to the *Pabst Brewing Company*. That company agreed to advance to them in the neighborhood of $20,000. This sum was to be repaid in the nature of an excess charge on each barrel of beer supplied to Weber & Stuber by the *Pabst Brewing Company*. As a matter of security Weber &

Stuber executed to the *Pabst Brewing Company* an assignment of the lease executed to them by the plaintiff, providing that upon default the *Pabst Brewing Company* might take possession of the premises. It was not an assignment *in præsenti*. It was a conditional assignment merely, for the purposes of security, and so long as Weber & Stuber performed their contract with the *Pabst Brewing Company* that company acquired no right to the possession of the premises under the assignment. It was provided in and by the terms of the original lease that it should not be assigned without the consent of the lessor. The written assignment showed plainly upon its face that it was executed by Weber & Stuber to the *Pabst Brewing Company* for the purposes of security merely, and that unless a breach occurred on the part of Weber & Stuber the right of possession on the part of the *Pabst Brewing Company* would never arise. This assignment executed by Weber & Stuber was taken to the plaintiff with a request that it consent thereto. As a condition to its consent the plaintiff required the *Pabst Brewing Company* to sign an agreement at the foot of Weber & Stuber's signature, in the following language: "The said *Pabst Brewing Company* hereby agrees to perform all the terms, covenants, conditions, and agreements of said lease to be performed by the said lessees therein." Thereupon it appended its written consent to the assignment of the lease at the foot of such agreement.

The question is, What was the nature of the obligation assumed by the *Pabst Brewing Company* under said agreement? The lower court, and the majority opinion here, holds that the *Pabst Brewing Company* obligated itself to pay all rent arising under the terms of the lease from that date. That such was the intention of the parties is rendered doubtful by the fact that Weber & Stuber continued in the possession of the premises and continued to be liable to the plaintiff under the terms of the original lease signed by them. Plainly it was not the intention of the parties to sub-

stitute the *Pabst Brewing Company* for Weber & Stuber as the primary obligors upon the lease. They not only continued in possession, but the plaintiff continued to look to them for the payment of the rent. If the construction of the court be correct, we have the very novel and extraordinary circumstance of two parties being primarily liable in the absence of any joint, or joint and several, undertaking. It is not intended to intimate that such a circumstance could not arise, but the very extraordinary character of the situation is in and of itself a strong circumstance to negative such an intent on the part of the parties.

The majority opinion suggests that while the plaintiff relied upon the financial responsibility of Weber & Stuber in making the lease, the fact that they found it necessary to make financial arrangements in order to raise the money for the improvements might have shaken the confidence of the plaintiff in their financial responsibility, and when presented with the written assignment of the lease it seized the opportunity to obtain security for the payment of the rent. If this were the intention of the parties, it is submitted that the language employed was poorly adapted for the accomplishment of such purpose and not such language as is ordinarily used under such circumstances. If it were the intention of the parties that Weber & Stuber should continue in the possession of the premises, retain their contractual obligations with the plaintiff, and it should look to them primarily for the payment of the rent, resorting to the *Pabst Brewing Company* therefor only upon default of Weber & Stuber, then the intention of the parties was that the *Pabst Brewing Company* should become guarantor of the rent, and this agreement, ordinarily, would have been expressed in the usual and ordinary terms of a guaranty, and the liability of the *Pabst Brewing Company* would be but secondary, so to speak. It is conceded, however, on the part of every one that the liability of the *Pabst Brewing Company* is primary and not secondary. The fact that the agreement was not

in the form of a guaranty; to my mind conclusively nega-
tives the idea that it was the intention of the parties, or any
of them, that the *Pabst Brewing Company* should become
liable for Weber & Stuber's rent, or that it assumed any lia-
bility whatever under the terms of the lease so long as
Weber & Stuber remained in the possession of the premises.

But the question persists, What was the purpose of the
agreement? It is submitted that the agreement is one
which ordinary care and prudence would prompt the plaint-
iff to demand if the assignment were to take immediate ef-
fect, for the reason that it is well settled that the assignee
of a lease assumes only such liabilities and responsibilities
as arise from the privity of estate growing out of posses-
sion. 24 Cyc. 982; *Bell v. American Protective League,*
163 Mass. 558, 40 N. E. 857; *Consolidated Coal Co. v.
Peers,* 166 Ill. 361, 46 N. E. 1105; *Durand v. Curtis,* 57
N. Y. 7, 11; *Consumers' Ice Co. v. William H. H. Bixler
& Co.* 84 Md. 437, 35 Atl. 1086; *Washington N. G. Co. v.
Johnson,* 123 Pa. St. 576, 16 Atl. 799; *Peck v. Christman,*
94 Ill. App. 435; *Kribbs v. Alford,* 120 N. Y. 519, 24 N. E.
811; *Dolph v. White,* 12 N. Y. 296. For instance, the as-
signee of a lease whose liability is that arising from a mere
privity of estate may assign the lease to a beggar and there-
by escape further liability for the payment of rent. There
are numerous covenants in the lease from the *Camp Com-
pany* to Weber & Stuber which are clearly personal cove-
nants and do not run with the land. For example, the
covenant prohibiting gambling on the premises or their use
for other illicit or illegal purposes, or for purposes which
would make the premises extrahazardous in the opinion of
the superintendent of the Milwaukee board of fire under-
writers; the covenants in regard to cleaning streets, alleys,
and sidewalks in front of and around the premises, and to
obey any and all lawful orders, rules, and regulations of
any state or municipal officers, boards, or commissions hav-
ing authority in the premises affecting the demised prop-

erty; that no unsightly signs and no advertising matter shall be placed by them (the lessees) on the outside of the demised premises, as well as the covenant that the lessees will not sublet said premises or assign the lease for any purposes whatsoever without the consent of the lessor in writing. These are all personal covenants. None of them run with the land, and in order to create a duty on the part of the assignee of the lease to comply with these terms therein, just such a provision as was signed by the *Brewing Company* was necessary. As above stated, it is just such a provision as care and prudence would require if the assignment of the lease were to take effect immediately, to the end that the assignee of the lease would be bound by each and every provision thereof.

Is there any reason to believe that the parties had any other or different purpose in mind simply because the assignment was given by Weber & Stuber to the *Brewing Company* as security for the performance of a collateral contract and the resulting fact that the *Brewing Company* might never come into possession of the premises? I am frank to say that I can see no reason for such a conclusion, when we concede, as it seems to me must be conceded, that the agreement upon which the liability of the *Brewing Company* is predicated is a natural and prudent condition to the consent of the assignment of the lease under any form. To my mind the conclusion is inevitable that the liability assumed by the *Brewing Company* was one to arise when and only when it came into possession of the demised premises under and by virtue of the assignment of the lease, and that until then there was no liability on the part of the *Brewing Company* whatever. The subsequent dealings of the parties are consistent with this view. The *Camp Company* continued to collect rent from Weber & Stuber and said nothing to the *Brewing Company* with reference thereto, except upon one occasion, when Weber & Stuber were in default for the payment of taxes for thirty days and were

in arrears for two months' rent. The *Camp Company* then (March 2, 1916) wrote to the *Brewing Company* calling its attention to the arrearages. While it may be inferred from the letter of the *Camp Company* that it looked to the *Brewing Company* for the payment of these arrearages by virtue of the agreement under consideration, the *Brewing Company* certainly did nothing that can be construed as assenting to such view. On March 11th the *Brewing Company* replied to the letter, saying they had had an interview with Weber & Stuber and had agreed to assist them in installing a bookkeeping system and that Weber & Stuber had agreed to make arrangements for the payment of the taxes and back rent and trusted that the *Camp Company* would be able to make a satisfactory adjustment with them. There is nothing in this letter which acknowledges responsibility on the part of the *Brewing Company* for the rent or taxes then due. The interest of the *Pabst Brewing Company* in the matter is not at all surprising. It was interested in Weber & Stuber to the amount of $20,000 and was interested in their continuance as a going concern. It was but natural that it should exercise its good offices in urging Weber & Stuber to continue the lease. Its conduct at that time amounted to nothing more than that of a friendly, though perhaps interested, mediator, and fell far short of a recognition of its liability under the terms of the agreement.

If it had been the purpose of the parties to impose an immediate liability upon the *Brewing Company,* such liability could have been made to appear in much less equivocal language. The agreement was phrased by an able practitioner in this court, from whom we do not expect such ambiguity of expression as will conceal its real purpose from all but a bare majority of the members of this court. I submit that the language in the setting in which it is found, inserted under the circumstances as they existed, was appropriate to impose upon the *Brewing Company* the liability herein ascribed to it, but that it is extraordinary and inappropriate

language to create the liability imposed by the majority opinion.

I am authorized to state that Mr. Justice SIEBECKER and Mr. Justice ESCHWEILER concur in the foregoing dissenting opinion.

. A motion for a rehearing was denied, with $25 costs, on September 25, 1920.