JONES, Respondent, vs. HOLLAND FURNACE COMPANY, Appellant.

*November 19—December 8, 1925.*

*Evidence: Parol evidence: To explain ambiguous writing: Admissibility: Sales: Breach of warranty: Furnace not heating premises: Damages: Loss of rents: Roomers leaving house.*

1. In determining the meaning of a writing which is ambiguous, evidence is admissible to ascertain the situation and surrounding circumstances in order that the intention of the parties may be ascertained; and words in themselves equivocal may admit of precise and definite application if resort is had to the circumstances under which the instrument was made.   p. 398.

2. In an action for the breach of a warranty in a contract to install a furnace in a rooming house that it would furnish "good heating service," parol evidence of the conversations of the parties when the contract was being negotiated that "good heating service" meant heat up to seventy degrees when the temperature outside was ten degrees below zero, is admissible. p. 399.

3. Evidence that coal was freely used, that the furnace was properly managed by plaintiff, and that it failed to heat the premises, as well as expert testimony as to whether the heating system was adequate, is *held* to sustain the findings of the court that the furnace did not comply with the warranty under which it was sold. p. 401.
4. Where it was proved that roomers had left the house because the rooms were not properly heated, and plaintiff thereby suffered loss, consequential damages are proper. p. 401.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

The plaintiff in this case had a Holland furnace No. 60 installed in her house at 711 Marshall street, Milwaukee, Wisconsin, which she operated as a licensed rooming house, under a contract with the defendant furnace company containing warranties as found by the trial court as follows: "The *Holland Furnace Company* expressly guarantees and warrants to the plaintiff, *Sarah E. Jones,* that the said furnace will warm all the said rooms," and "expressly guarantees and warrants that the said furnace which has been installed for the plaintiff, *Sarah E. Jones,* in her said house, shall give good heating service in all rooms to which pipes have been run, according to said aforementioned written agreement which had theretofore been made and entered into between these same parties." The agreement contained the clause, "provided proper fuel is furnished and our instructions obeyed."

The furnace was installed in the autumn of 1923 and used during that winter and the winter of 1924. The plaintiff complains that the furnace did not properly heat the house, and that as a result of such insufficient heating about ten of her roomers left, causing loss to her; that she complained to the *Holland Furnace Company* but that no satisfactory adjustment was made; that the defendant company has broken its warranty and should respond in damages to the plaintiff.

On the trial, which was had before Judge BREIDENBACH, a jury having been waived, testimony of an expert witness was produced to the effect that a scientific examination of the house to be heated and of the heating capacity of the furnace installed showed that the installed furnace was inadequate by thirty-six per cent. to heat the premises properly. The testimony of a considerable number of former roomers was adduced to show that the rooms were not comfortable when the temperature outside was around zero and that they had left the plaintiff's rooming house because the rooms were not properly heated. As against this testimony the defendant company produced other experts, whose testimony was to the effect that the size of furnace installed was sufficient to properly heat the house in question and that the furnace in question was properly installed. The most important point in the trial arose over the introduction of testimony by the plaintiff to the effect that the defendant's agents had assured her that "good heating service" meant heat up to seventy degrees when the temperature outside was ten degrees below zero. This was introduced by the plaintiff to explain the written contract, as were also certain ordinances of the city of Milwaukee with reference to the required standard of heating in apartment and rooming houses.

The court found that the plaintiff had suffered damages in the amount of $497, but that the consequential damages amounted to $400, and that deducting the amount still due the defendant company upon the contract of installation the judgment should be in the sum of $438.66 damages and costs. From this judgment the defendant appeals, assigning as error the admission of the parol evidence to explain the written contract and the allowance of consequential damages, and the general assignment that the findings of fact are not supported by the weight and preponderance of the evidence.

After the installation of the furnace the plaintiff had mortgaged the premises to the Integrity Building & Loan Association. The defendant upon the nonpayment of the purchase price started a replevin action to recover possession of the furnace and the Loan Association was interpleaded as a plaintiff and judgment found in favor of the Loan Association on the grounds that the furnace had become a fixture and that it had no knowledge of the contract between the plaintiff, *Sarah E. Jones,* and the defendant company. No appeal is brought from this portion of the judgment.

Additional facts will be stated in the opinion.

For the appellant there was a brief by *Hess, Bancroft & Meldman,* attorneys, and *L. H. Bancroft,* of counsel, all of Milwaukee, and oral argument by *Mr. Bancroft.*

*Carl H. Juergens* of Milwaukee, for the respondent.

JONES, J. The trial court expressed the view that the writings containing the warranties were ambiguous in their terms and that extrinsic evidence could be received, not to contradict the terms but to explain their meaning and show the real intention of the parties. Counsel for the appellant cite many authorities to the well settled general rule that, in the absence of fraud or mistake, parol evidence of contemporaneous oral agreements between the parties is inadmissible to contradict, alter, or modify the written contract. But there is a qualification as old as the rule itself to the effect that extrinsic evidence is not necessarily to be rejected merely because the instrument is of such doubtful meaning on its face as to admit of more than one interpretation. It is often essential, where the meaning of the writing is doubtful or equivocal, to receive parol evidence to show its real nature. We shall cite only a few of the many decisions of this court which point out the difference between evidence to contradict or vary a contract and evidence to

enable the court to determine what the parties intended to express: *Johnson v. Northwestern Nat. Ins. Co.* 39 Wis. 87; *Bedard v. Bonville,* 57 Wis. 270, 15 N. W. 185; *Beason v. Kurz,* 66 Wis. 448, 29 N. W. 230; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661.

In the instant case the appellant's counsel do not argue that it was not the intention of the parties that the furnace should be adequate to heat the house in question. They do not argue that the warranties were too vague and uncertain to be of any effect. It might be quite difficult to lay down any rule of universal application as to the meaning of the words "good heating service." In England and the countries of Continental Europe temperature varying from sixty to sixty-five degrees might be considered adequate. A furnace which might render good service in the climate of California might be entirely inadequate in Wisconsin. We agree with the trial court that the words in the contract of warranty were ambiguous in their meaning; at least until explained they were uncertain as to the degree of heat intended to be furnished.

No rule is more familiar than this: that in determining the meaning of a writing which is ambiguous it is proper to receive evidence to ascertain the situation and surrounding circumstances in order that the court may put itself in the place of the parties and then ascertain their intention. For example, it was clearly competent in this case to prove the kind of a building, the number of rooms, their relation to each other, and the purposes for which the parties knew the premises were to be used. It is a closer question whether, in the case of such a contract, it is permissible to prove the conversations of the parties when the contract was being negotiated. There is undoubtedly authority holding that such conversations should not be received. On the other hand, it has frequently been held that where the contemporaneous conversations are not offered and received to change or vary the agreement, but are admitted in connec-

Jones v. Holland Furnace Co. 188 Wis. 394.

tion with the surrounding circumstances to explain the meaning of the document, otherwise uncertain in meaning or ambiguous, such testimony is admissible. In this case it is a verity that "good heating service" was to be furnished. The parol statements that the furnace would keep the house heated at a certain temperature named under certain conditions were in no way inconsistent with the terms of the written contract, nor did they contradict or vary it. Such testimony only tended to make certain that which was uncertain. As said by Mr. Justice Vinje, "Such conversations or negotiations, therefore, become in a sense characterizing circumstances surrounding the execution of the writing." *Hammond v. Capital City Mut. F. Ins. Co.* 151 Wis. 62, 138 N. W. 92.

In an early leading case which has been often cited and quoted but never overruled, the ambiguity or uncertainty related to the meaning of the word "team." In the opinion by Mr. Chief Justice Dixon it was said:

"The word 'team,' as used in the contract, is of doubtful signification. It may mean horses, mules, or oxen, and two, four, six, or even more of either kind of beasts. We look upon the contract and cannot say what it is. And yet we know very well that the parties had some definite purpose in using the word. The trouble is not that the word is insensible and has no settled meaning, but that it at the same time admits of several interpretations, according to the subject matter in contemplation at the time. It is an uncertainty arising from the indefinite and equivocal meaning of the word, when an interpretation is attempted without the aid of surrounding circumstances. It appears on the face of the instrument, and is in reality a patent ambiguity. The question is, Can extrinsic evidence be received to explain it? We think it can." *Ganson v. Madigan,* 15 Wis. 144.

The opinion then refers to the fact that there is an intermediate class of cases partaking of the nature of both patent and latent ambiguities and comprising instances where the

words are equivocal but yet admit of precise and definite application by resorting to the circumstances under which the instrument was made, in which parol testimony was admissible. Later in the opinion it is stated that:

"If evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time of their understanding of them, ought not to be excluded." *Ganson v. Madigan,* 15 Wis. 144.

See, also, *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 359, 128 N. W. 43; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 553, 93 N. W. 459; *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 89 N. W. 483; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661; *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631.

The appellant's counsel objected to the admission as evidence of the ordinance of the city of Milwaukee establishing a standard of heating in rooming houses. No reference to this ordinance is made in the findings and it does not appear whether or not it was considered important. Defendant was engaged in Milwaukee in selling furnaces. It does not seem unreasonable that the existence of such an ordinance should have been considered by the defendant and that it was a circumstance throwing some light on the intentions of the parties. As we conclude that there was sufficient other testimony to establish such intention, this question need not be decided.

A large amount of evidence was received bearing on the adequacy of the furnace. This included expert testimony produced by both parties, and their opinions were given as to whether the system was sufficient to adequately heat the premises having in mind that "adequately" means seventy degrees in temperature outside as low as ten degrees below zero. Although defendant produced the greater number of witnesses the court found for the plaintiff on this issue. In this connection it is important that, although

there was evidence that coal was freely used and that the furnace was properly managed by plaintiff's agents, there was much testimony tending to show that it signally failed to heat the premises within the meaning of the contract. On this main issue we see no reason for disturbing the findings of the trial court.

We find no error as to the allowance of consequential damages. It was undisputed that the roomers left because the rooms were not properly heated, and the consequent loss to the plaintiff was established by the proof.

*By the Court.*—Judgment affirmed.