DARLING & COMPANY, Appellant, vs. FRANK CARTER COMPANY, Respondent.

*April 7—May 10, 1932.*

224

226

For the appellant there were briefs by *Peterson & Slocumb* of Menomonie, and oral argument by *Ira O. Slocumb*.

For the respondent there was a brief by *Bundy & Bundy* of Menomonie and *Bundy, Beach & Holland* of Eau Claire, and oral argument by *R. E. Bundy* and *William H. Bundy*.

NELSON, J. From the decision of the trial court on the motions after verdict, it appears that the court concluded that there was nothing in the original writing which obligated the defendant to indorse farmers' notes; that the written contract was not ambiguous in that respect; that, because the contract provided that "verbal promises or agreements of any kind are unauthorized and will not be recognized by Darling & Company," it must be conclusively presumed to contain the entire agreement between the parties; that parol evidence was improperly admitted to contradict the terms of the written contract, and finally that the oral agreement to indorse farmers' notes was in effect an agreement to answer for the debt and default of another and therefore void under the statute of frauds. Sec. 241.02 (2),

Stats. Throughout the trial the court was evidently of the opinion that the contract was ambiguous and subject to explanation by parol evidence, and permitted both parties to introduce such evidence not only as to the surrounding circumstances but also as to conversations had contemporaneously with the making of the contract, for the purpose of explaining the intended meaning of its ambiguous provisions.

The original contract entered into on the 16th day of January, 1928, and approved by the plaintiff on the 19th day of January, was obviously an incomplete contract, in that it did not contain the entire agreement between the parties but specifically provided that the prices, terms, and discounts "shall be as per list furnished by Darling & Company each season; subject to change upon written notice." The list was therefore, by specific reference, made a part of the contract. That this is true cannot be doubted. That writings may be made a part of a contract by reference is unquestioned. 13 Corp. Jur. p. 530, § 488. See, also, *Seitz v. Zukowski*, 194 Wis. 78, 215 N. W. 939. Clearly parol evidence was admissible to identify the "list referred to," and, when identified, the list became a part of the contract to all intents and purposes as though originally and specifically recited therein. All of its provisions relating to prices, terms, discounts, payment of freight, and settlement by farmers' notes became a part of the contract.

The language "if settlement by farmer note is desired, write for 'Special Note Agreement,'" is unquestionably ambiguous, in that the provisions of the Special Note Agreement were not disclosed, and was subject to explanation or identification by parol evidence, not for the purpose of varying or contradicting the contract but for the purpose of explaining the sense in which its language was used. The court permitted both parties to introduce testimony tending fully to explain the meaning of such language. In so doing we think that the court did not violate the parol-evidence rule or commit error. While parol evidence will not be admitted

to contradict or vary the terms of a written instrument, it is always admissible in case of ambiguity for the purpose of ascertaining the sense in which the parties intended to use the ambiguous term or terms, and the rule is sufficiently broad to permit the introduction of evidence of antecedent or contemporaneous oral agreements or conversations for purposes of interpretation. *Firestone Tire & Rubber Co. v. Werner,* 204 Wis. 306, 236 N. W. 118. The following additional authorities show how firmly such rule is established by the decisions of this court: *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43; *Hammond v. Capital City Mut. Fire Ins. Co.* 151 Wis. 62, 138 N. W. 92; *Jones v. Holland Furnace Co.* 188 Wis. 394, 206 N. W. 57; and *Seitz v. Zukowski, supra,* all of which follow the rule enunciated in *Ganson v. Madigan,* 15 Wis. *144.

As pointed out in *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661, failure to keep in mind the wide distinction between varying a contract by parol evidence and resorting to such evidence in aid of its construction often leads to error. Parol testimony, including conversations between the parties to a contract, is admitted for the purpose of making certain that which, without it, would be uncertain. "Such conversations or negotiations, therefore, become in a sense characterizing circumstances surrounding the execution of the writing." *Hammond v. Capital City Mut. Fire Ins. Co., supra.*

We think that the trial court failed to give proper consideration to the rather broad and well established exceptions to the parol-evidence rule and that under all the circumstances it was not justified in deducting from plaintiff's claim the amount of the two unindorsed notes.

Giving consideration to the plaintiff's parol evidence the verdict of the jury is well supported. It appears from plaintiff's evidence that, at the time its agent procured the signature of the defendant to the contract, a prior list in all

respects similar to the one mailed to the defendant was exhibited; that the "settlement by farmer note" provision was discussed and the conditions of such settlement explained. It further appears that, although the provision relating to "settlement by farmer note" was not contained in the writing of January 28th, it was contained in the list thereafter submitted and that it was duly considered by defendant's manager at Campia, as revealed by his letter of March 5th, in which he wrote:

"I noticed, in looking over some of your literature, about 'Special Note Agreement' when fertilizer is to be settled for by farmer's personal note. Kindly send me some of these 'Special Note Agreements.'"

Although the defendant claims not to have received plaintiff's reply thereto, in which it was stated: "We do not have any of the Special Note Agreements made up, but if you have to settle for some of the fertilizer this way, you should take notes from your customers dated June 1, 1928, and due on or before December 1, 1928. These notes bear interest at the rate of six per cent. per annum. After taking. the notes, you indorse them and send them in to us and we credit your account," the jury, under all of the circumstances, might justly have inferred that that letter was received by the defendant at Campia.

It appears that, during the absence of the manager from Campia for about a month, fertilizer of the value of $587 was delivered to Harry Weddes without his paying therefor. When the manager returned and checked up on sales made during his absence he lost little time in obtaining a note from Weddes. It appeared upon the trial that the farm occupied by Weddes was in his wife's name and that he was financially irresponsible. The jury may well have concluded that the claimed right of the defendant to turn over unindorsed farmer notes in settlement of its fertilizer account was an afterthought occasioned by its desire to be relieved from the

predicament in which it found itself due to its having permitted Weddes to obtain fertilizer worth $587 when he was not entitled to credit.

But one other contention requires consideration. The defendant, in its original answer, alleged as and for a second defense to the plaintiff's complaint that if the contract required the defendant to indorse farmers' notes when used in settling with the plaintiff, then the plaintiff waived such requirement and received in settlement of its account the Weddes note in the amount of $587 and the Kerr note in the amount of $50.75, and that the defendant relied on the plaintiff's waiver and acceptance of said notes, acted thereon, and would be prejudiced if the plaintiff were permitted to assert that it did not receive such notes in settlement. When the special verdict was being framed, defendant requested the court to submit a question as to whether or not the plaintiff waived the requirement to indorse notes it offered in settlement of plaintiff's account. The court, however, was of the opinion that this question presented a question of law and the parties thereupon agreed that it should be decided by the court. The court, however, did not specifically pass upon the question of waiver and upon this appeal defendant has moved for a review of that branch of the case.

The defendant contends that on July 31, 1928, after the notes had been shunted back and forth a number of times, the plaintiff, in one of its letters under that date, wrote: "We would prefer that you hold these (notes) and collect them for us." This sentence occurs in a letter returning the notes to the defendant and in which the plaintiff also wrote:

"As soon as we get the carry-over adjusted on your account, along with the check of $227.58 and the discount, we will send you a corrected statement, and would like to see you take advantage of the thirteen per cent. discount and commission. Of course, if you should wait until fall and pay the account after collecting these notes, it will be but ten per cent."

On the same day the plaintiff, evidently having received a statement of the amount of the fertilizer to be carried over, again wrote the defendant as follows:

"We have credited your account with the on-hand fertilizer, along with the two checks and discount, and are now inclosing a statement showing a balance due of $866.29. If you want to take care of this account within the next few days, we will still let you deduct the thirteen per cent. discount, amounting to $117.20. However, as suggested in our previous letter, if this balance remains open on your account until the three notes are collected, you will be entitled to but ten per cent. commission."

It is perfectly apparent that the plaintiff did not, by its letter of July 31st, accept the notes in settlement of its account and thereby waive its right to insist on their indorsement by the defendant, if offered in settlement.

Considerable stress is laid upon that paragraph of the original writing which relates to the ownership in Darling & Company of the fertilizer consigned, and of the notes, accounts, cash, and other profits from the sale of fertilizer. The defendant contends that this language permitted it to take notes for fertilizer and that such notes, when so taken, belonged to the plaintiff. Were the contract a mere agency contract to sell plaintiff's product there would be much force in that contention. The contract, however, is obviously one relating to merchandise to be consigned to the defendant for sale, for which, when sold, the defendant must settle with the plaintiff. Looking at the whole contract, we entertain no doubt that the purpose of the language above quoted was to be of force and effect only in case the plaintiff was compelled, due to receivership or insolvency proceedings involving the defendant, to trace the proceeds of fertilizer.

*By the Court.*—Judgment reversed, with directions to enter judgment in favor of the plaintiff for the full amount of its claim.