FINDORFF and another, Appellants, vs. FULLER & JOHNSON MANUFACTURING COMPANY, Defendant, and CITY OF MADISON, Respondent.

*May 9—September 12, 1933.*

For the appellants there were briefs by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *L. W. Raeder* and *G. Burgess Ela*.

*Virgil H. Roick,* city attorney, and *Theodore G. Lewis* of Madison of counsel, for the respondent.

For the defendant Fuller & Johnson Manufacturing Company there was a brief by *Stephens, Sletteland & Sutherland,* attorneys, and *Marvin P. Verhulst* of counsel, all of Madison.

The following opinion was filed June 6, 1933:

NELSON, J.   On and prior to February 13, 1930, Fuller & Johnson Manufacturing Company, a corporation, hereafter called the company, was the owner of the lands described in the statement of facts.   At that time a comparatively new building belonging to the company was located at the corner of what is now Dickinson street and East Washington avenue.   Adjoining said new building on its northwesterly side was a building known as the blacksmith shop, which in turn adjoined another building, which faced westerly on what is now Dickinson street and northerly on Mifflin street.   These buildings, with the exception of the blacksmith shop, were built upon the northeasterly line of what is now Dickinson street.

The blacksmith shop was situated partly upon the said northeast fifty-one feet of what is now Dickinson street and partly upon other lands belonging to the company. The portion of the blacksmith shop extending into what is now Dickinson street was about 102 feet in length and about 49 feet in width and extended back of what is now the street line a distance of 29 feet. The buildings mentioned were contiguous and used as one plant. Prior to February 13, 1930, there were negotiations between the city of Madison and the company looking to the purchase by the city for street purposes of the northeast fifty-one feet of Dickinson street between the southeast line of Mifflin street and the northwest line of Washington avenue adjoining block 223, then occupied in part by the blacksmith shop. The company offered to sell said land to the city for the sum of $20,000. Its offer was accepted by the passage of a resolution by the city council but no formal contract seems to have been entered into. On February 13, 1930, the company entered into a written contract with the plaintiffs relating to the revision of the blacksmith shop building. The plaintiffs agreed to perform all labor, furnish all materials pertaining to the razing of the blacksmith shop back to the line of the new building; to remove all of the concrete floor covering this area and to remove all debris from the property. The contract provided that "all timber, old brick," etc., removed from the blacksmith shop should become the property of J. H. Findorff. The plaintiffs further agreed to erect a new outside wall to conform in construction and architecture with the outside wall of the new building and on a line with it; to remove the old roof over a portion of the old building; to erect a new saw-tooth truss roof according to specifications contained in the contract; to erect a temporary partition to inclose the remaining portion of the building during the period in which the razing of the old building was in process and during the construction of the new outside wall,

and to perform certain other work. The contract provided that the work start immediately on the revision of the blacksmith shop and that the outside portion should be razed and cleared to grade not later than February 28, 1930. The contract further provided: "All foregoing labor and material complete for the sum of $5,475." The plaintiffs immediately entered upon the performance of their contract. The work of razing and removing that part of the blacksmith shop which was located on the northeast fifty-one feet of what is now Dickinson street was completed prior to March 1, 1930. The final work under the contract was completed on April 15, 1930. On March 1, 1930, the company conveyed to the city of Madison by warranty deed "the northeast fifty-one feet of Dickinson street between the southeast line of Mifflin street and the northwest line of Washington avenue, adjoining block 223, in the city of Madison, for highway purposes." The consideration for that conveyance was $20,000 which was paid to the company. At that time the company's plant, which included all of the lands hereinbefore mentioned, was subject to a trust deed to secure $290,000. The trustee released the premises conveyed to the city of Madison from the lien of the mortgage. The company paid to the plaintiffs on their contract the sum of $506.67 but defaulted as to the balance due. Thereafter, on October 1, 1930, the plaintiffs filed their claim for lien against the northeast fifty-one feet of Dickinson street, etc., and the other lands hereinbefore described. Affidavit of renewal was filed in March, 1931, and thereafter this action was duly commenced.

Although numerous contentions are made by the city of Madison in support of the judgment as rendered, we think this action may be disposed of by considering two principal questions: (1) Are the plaintiffs entitled to a lien for tearing down a part of the blacksmith shop and hauling away the materials and debris? In other words, did such work and labor constitute a "removal of any building" within the

meaning of sec. 289.01, Stats.? (2) Was the contract divisible so as to permit the trial court to hold that that part of the contract relating to the work and labor of tearing down and removing the timbers, brick, and debris was so fully performed prior to March 1, 1930, as to require that a claim for lien be filed within six months from the date of the performance of said work? It will be recalled that the work of razing the blacksmith shop was completed prior to March 1, 1930, while the remainder of the contract work was not completed until April 15th. The lien was filed on October 11, 1930, within six months from April 15th, but not within six months from March 1st.

1. While the language "removal of any building" seems not to have been construed by this court, we entertain no doubt that that language is sufficiently broad and comprehensive to include the tearing down of a building and hauling it away. Lien laws are remedial in character and are to be liberally construed so as to make the remedial purpose of the legislature effectual. *Vilas v. McDonough Mfg. Co.* 91 Wis. 607, 65 N. W. 488; *Wiedenbeck-Dobelin Co. v. Mahoney,* 160 Wis. 641, 152 N. W. 479; *Herro v. Heating & Plumbing F. Corp.* 206 Wis. 256, 239 N. W. 413.

We think that the language "removal of any building," found in our statute, should not be construed as applying merely to the removal of a building as a unit from one location to another. We do not think that the legislature intended that that language should be given so strict a construction. We think the language sufficiently broad to require that the plaintiffs be given a lien for the work of removing a part of the blacksmith shop even though it was not removed as a unit or part of a unit.

2. Was the claim for lien filed within six months from the date of the performance of the contract work? The city contends· that it was not and the plaintiffs contend that it was. It is argued in support of the city's contention that the

contract is divisible; that is to say, that that part of the contract which related to the razing of the blacksmith shop back to the building line of the new building and the removal of the debris, which was to be done not later than February 28, 1930, was separate from the remainder of the contract. We find nothing in the contract (which in our opinion is clear and unambiguous) to justify the conclusion that the parties to the contract intended the contract to be divisible or that two separate jobs were to be performed by the plaintiffs, that is to say: one relating to the razing of the blacksmith shop back to the line of the new building, and another relating to the building of a temporary partition, new wall, roof, etc. In 2 Williston on Contracts, § 861, it is said:

"The essential feature of such a contract (divisible contract) is that a portion of the price is by the terms of the agreement set off against a portion of the performance and made payable for that portion, so that when part of the performance has been rendered a debt for that part immediately arises. Where by the terms of a contract the performance is to be paid for at a certain rate so that the contract price for a portion of the performance can readily be calculated, it is still true that in the absence of an agreement to that effect, no part of the price is payable until the whole performance has been received. It is essential not only that the price for a part can be calculated, but that expressly·or impliedly there shall be a promise to pay a part."

Again in sec. 862, following, it is further said:

"The governing principle is the manifest intention of the parties in view of the nature of the contract, and the usage of business—that is, their intention to have performance of the contract in parts, and have the performance of a part on one side the price or exchange of a corresponding part on the other. If payment of a lump sum is to be made for several articles, the contract is necessarily indivisible."

We think it clear that the trial court erred in holding that the contract was divisible.

It is further argued that since all the timber, old brick, etc., were to become the property of the plaintiffs the contract should be construed as though it expressly provided that the timber, brick, etc., should fully pay the plaintiffs for the work of razing the blacksmith shop back to the building line of the new building. We find nothing in the contract even tending to support the city's contention that it was the intention of the parties that the timbers, brick, etc., should fully compensate the plaintiffs for the work of razing the blacksmith shop back to the desired line. The contract specifically provided: "All foregoing labor and material complete for the sum of $5,475." The most that can be said is that the timber and old brick, together with the sum of $5,475, constituted the agreed compensation for the work and materials to be performed and furnished by the plaintiffs.

The trial court may have been influenced in reaching its conclusion, that the contract was divisible, by certain testimony received over the plaintiffs' objection, tending to prove that the parties orally agreed that the lumber, brick, etc., to be removed should pay the plaintiffs for the work of razing the blacksmith shop. We think that such testimony was improperly admitted. The contract was clear and unambiguous. The admission of such testimony offended against the parol-evidence rule. *Hammond v. Capital City Mut. F. Ins. Co.* 151 Wis. 62, 138 N. W. 92; *H. H. Camp Co. v. Pabst Brewing Co.* 172 Wis. 211, 178 N. W. 474; *Schuhknecht v. Robers,* 192 Wis. 275, 212 N. W. 657; *Wheelwright v. Pure Milk Asso.* 208 Wis. 40, 240 N. W. 769, 242 N. W. 486. Since the contract was, in our opinion, not divisible, and since the plaintiffs had six months from the date of the last performance of work, etc., in which to file their lien (sec. 289.06, Stats.), the contention of the city that the lien was not filed in time is without merit.

No reason is perceived why the plaintiffs should have been denied a lien against all of the property described in its claim for lien which was owned by the company at the time of the commencement of the contract work. In the very recent case of *Capital City Lumber Co. v. Schroeder*, 208 Wis. 157, 242 N. W. 489, it was said:

"It is well established that a conveyance of real estate, at a time when work thereon is in progress, or when the premises are subject to a lienable claim, which is thereafter perfected during the time limited by statute, does not affect the right of a materialman to a lien for materials theretofore furnished." Citing numerous cases.

The fact that the city of Madison, a municipal corporation, was the purchaser of the land, in no way militates against the enforcement of plaintiffs' claim for lien. In *Fulton v. State Annuity and Investment Board*, 204 Wis. 355, 236 N. W. 120, it was held that a state agency takes property charged with all existing liens. In that case the board took a mortgage to secure a loan on property which, at the time, was subject to claims for lien. It was there held that the lien of a contractor was prior to the lien of the mortgage taken by the board. The right of the plaintiffs to claim a lien was fixed at the time the company deeded the land to the city of Madison. It would be very unjust to hold that a purchase by a municipality of lands which are subject to claims for mechanics' liens destroys the rights of a lien claimant, or prospective lien claimant who filed his claim for lien within the time required by law.

Nor, in our opinion, do the facts in this case bring it within the rule stated in *Hutchins v. Bautch*, 123 Wis. 394, 101 N. W. 671; *Evans-Lee Co. v. Hoton*, 190 Wis. 207, 208 N. W. 872; *Capital City Lumber Co. v. Schroeder, supra*, that the sale of an unfinished building which the grantor agrees to complete, may result in the grantor there-

after becoming a principal contractor and other contractors becoming subcontractors as to subsequent work done. The company did not agree to do any further work upon the lands conveyed to the city after the deed was delivered.

We see no escape from the conclusion that the plaintiffs are entitled to a lien on all of the lands described in their claim for lien.

*By the Court.*—Judgment reversed, with directions to enter judgment in favor of the plaintiffs on their claim for lien against all of the lands described therein.

A motion for a rehearing was denied, with $25 costs, on September 12, 1933.