TROPIC BUILDERS, LTD. *v.* UNITED STATES OF AMERICA, NAVY CAPEHART QUARTERS, INC., Owner, Lessee, SAM LEN, dba The Len Company & Associates, Contractor, and ALOHA CONSTRUCTION CO., INC., Subcontractor.

No. 4801.

SEPTEMBER 14, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, KOBAYASHI, JJ., AND CIRCUIT JUDGE KABUTAN IN PLACE OF LEVINSON, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

This is the second appeal in the case, and is from a circuit court judgment entered at the conclusion of a trial on remand, pursuant to our opinion reported in *Tropic*

*Builders* v. *Naval Ammunition Depot Lualualei Quarters,*
48 Haw. 306, 402 P.2d 440 (1965).

The parties in the case originally were Tropic Builders,
Ltd., plaintiff; and the United States, Naval Ammunition
Depot Lualualei Quarters, Inc., Sam Len, doing busness
as the Len Company and Associates, and Aloha Construc-
tion Co., Inc., defendants. The United States was dis-
missed as a party immediately after service. In this
opinion, the remaining parties will be referred to as Tropic,
NADLQ, Len and Aloha, respectively.

The case arose in connection with the construction of
military housing at Naval Ammunition Depot, Lualualei,
Oahu, under the Capehart Act, 42 U.S.C. § 1594 et seq.,
pursuant to a housing contract executed by the United
States, NADLQ, and Len on May 9, 1958.

Len was the prime contractor of the project. He per-
formed his contract through Aloha, a Hawaii corporation
which he organized and of which he was the sole stock-
holder.

NADLQ was a Delaware corporation organized by Len
to serve as the "mortgagor-builder" of the project under
the established Capehart procedure. Its capital stock was
originally wholly owned by Len, but the plan from the
outset was that it would be transferred to the United
States immediately upon the completion of the project.

As the mortgagor-builder, NADLQ was the owner of
the project, and held a 55-year lease of the project site
from the United States. The lease was mortgaged to Ralph
C. Sutro Co., which provided the construction money.

Tropic was a concrete and masonry subcontractor on
the project. It did its work under subcontract agreements
with Aloha.

The project was completed to the satisfaction of the
United States and NADLQ on April 30, 1959. On the same
day, Len transferred the capital stock of NADLQ to the
United States.

The notice of completion of the project, prescribed in R.L.H. 1955, § 193-42, was filed in the circuit court on May 19, 1959. On that day, Aloha owed $21,578.12 to Tropic under the subcontract agreements. In order to collect that amount, Tropic filed a notice of mechanic's lien, together with a demand for payment, on June 26, 1959, and had the same served on the United States, NADLQ, Len, and Aloha on June 30, 1959, all in compliance with §§ 193-42 and 193-45. Mechanic's lien was claimed on the interest of NADLQ in the project site and the improvements thereon.

Upon failing to receive satisfaction from the notice and demand, Tropic filed a complaint for the enforcement of mechanic's lien, as well as for personal judgment against Len and Aloha, and had summons issued thereon, on August 10, 1959. The complaint and summons were duly served on the United States, Aloha, and Len, respectively, on August 11, 13, and 14. With respect to NADLQ, the circuit court ruled that it was also duly served, but we held otherwise, for the reasons stated in our prior opinion.

The original trial was held on July 9, 1962. It resulted in judgment for Tropic in all respects. The circuit court adjudged that Len and Aloha were liable to Tropic for $21,578.12, with interest, costs, and attorney's fee of $5,382.88, for the recovery of which Tropic was entitled to enforce the mechanic's lien which it claimed. The judgment became final on January 4, 1963, following denial of motions for new trial and to amend findings of fact. Len and Aloha appealed from the judgment on February 4, 1963.

We affirmed the judgment as to Aloha, except for attorney's fee, reversed it as to Len personally, and remanded the case for further proceedings with respect to attorney's fee. We also set aside the adjudication regarding mechanic's lien for lack of service on NADLQ, with-

out prejudice to the question whether on remand Tropic should be given an opportunity to serve NADLQ so that its right to a lien and to enforce the same might be adjudicated.

The case went back to the circuit court on remand on May 21, 1965. At that time NADLQ was no longer in existence, for it had been merged into Navy Capehart Quarters, Inc., a Delaware corporation wholly owned by the United States, on December 3, 1962. Navy Capehart Quarters, Inc., will hereafter be referred to as NCQ.

NCQ was substituted for NADLQ, and was duly served by service upon the director of state regulatory agencies on November 12, 1965, and upon the commanding officer of the Capehart housing at the Lualualei Naval Ammunition Depot on November 15, 1965. NCQ's first response was a motion for dismissal of the action. Upon denial of the motion NCQ answered, and also filed a third-party complaint against Len, Columbia Casualty Company and Pacific Insurance Co., Ltd.

The third-party complaint was based upon a payment bond required under the Capehart Act and furnished by Len, as principal, and Columbia Casualty Company and Pacific Insurance Co., Ltd., as sureties. The complaint was filed on July 26, 1966, and served on Pacific Insurance Co., Ltd., on July 27, 1966, and Len and Columbia Casualty Company on October 10, 1966. Columbia Casualty Company and Pacific Insurance Co., Ltd., will hereafter be referred to as sureties.

After service of the third-party complaint, the sureties filed a cross-claim for indemnification against Len. This was done on November 2, 1966. The cross-claim was based upon Len's agreement with the sureties to indemnify them for all damages they might incur by reason of executing the bond.

The second trial was held on April 22-23, 1968. At its

conclusion, the circuit court entered a judgment adjudging that Tropic had a valid and enforceable mechanic's lien for $21,578.12, interest, costs, and attorney's fee of $7,767.50, on NCQ's lease of the project site and its interest in the improvements thereon; that Len and the sureties were jointly and severally liable to NCQ for the amount of the lien; that the sureties were entitled to recover from Len the amount of the lien, plus their costs and attorney's fee of $3,367; and that an order of sale of the liened property would be entered in the event the lien was not satisfied within 30 days. NCQ, Len, and the sureties appealed from the judgment.

The basic question for decision on this appeal is the validity of the adjudication with respect to mechanic's lien. If that adjudication should be invalid, the balance of the judgment must fall. That is so because the judgment, both as against Len and the sureties vis-a-vis NCQ and as against Len vis-a-vis the sureties, depends upon Len's obligation to deliver the completed project to NADLQ free of any mechanic's lien.

The adjudication on mechanic's lien is attacked on the following grounds: first, that the circuit court had no jurisdiction to make the adjudication; second, Tropic did not proceed in a timely manner to obtain the same; and third, that mechanic's lien cannot be enforced against property belonging to the United States or in which the United States has any interest.

The first ground has been urged upon us only by Len. It has not been stated as a point on appeal either by NCQ or the sureties. It is based on equating a Capehart bond to a payment bond required under the Miller Act, 40 U.S.C. §§ 270a-270d.

In federal public work, there is no mechanic's lien protection, and protection to labor and materialmen is afforded by a Miller bond. Under § 270b, a Miller bond

is enforceable only in a federal district court. By equating the bond in this case to a Miller bond, Len contends that § 270b applied thereto, and that Tropic's recourse was in the federal district court for enforcement of the bond and not in the circuit court for enforcement of mechanic's lien.

Federal courts of appeal are divided on the question as to whether § 270b applies to Capehart bonds. The United States Supreme Court has not resolved the conflict. In the absence of authoritative federal decision, the New Jersey Supreme Court, in *Minneapolis-Honeywell Regulator Co.* v. *Terminal Construction Corp.*, 41 N.J. 500, 197 A.2d 557 (1964), and the North Dakota Supreme Court, in *Robertson Lumber Co.* v. *Progressive Contractors, Inc.*, 160 N.W. 2d 61 (N.D. 1968), have decided that § 270b does not apply. The reasoning in those cases is persuasive. So, we also hold that § 270b does not apply to the bond in this case.

On the second ground, the contention is that Tropic failed to comply with the provision of § 193-42 requiring that proceedings to enforce mechanic's lien be commenced within three months after the completion of improvements. We see no merit in the contention.

Tropic filed its complaint, and had summons issued thereon, well within the statutory period. Under *Hackfeld & Co.* v. *Hilo Railroad Co.*, 14 Haw. 448 (1902), proceedings to enforce mechanic's lien are commenced "when the declaration has been filed and process issued, with intent that service be made promptly." In our prior opinion, we recognized that rule, and left to the circuit court to determine whether an opportunity should be given to Tropic to serve NADLQ, in the light of *Rollins* v. *United States*, 286 F.2d 761 (9th Cir. 1961), and other cases cited therein. The circuit court ordered that service be made on NCQ, as successor to NADLQ. We see no error in the order.

The third ground is also without merit. The judgment recognized the existence and enforceability of mechanic's lien not on the fee simple interest of the United States but on the interest of NCQ, as successor to NADLQ, in the lease and leasehold improvements on the project site.

At the time Tropic did its work, leases and leasehold improvements were amenable to mechanic's liens, effective from the time of visible commencement of operations for the improvements. R.L.H. 1955, §§ 193-40, 41, 44. The fact that the project site was owned by the United States in fee simple did not make NADLQ's lease and NADLQ's interest in the leasehold improvements immune from such liens. *Basic Refractories* v. *Bright,* 72 Nev. 183, 298 P.2d 810 (1956) ; *Crutcher* v. *Block,* 19 Okla. 246, 91 P. 895 (1907).

As a matter of fact, the United States, NADLQ, and Len contemplated the possibility that mechanic's liens might exist and be enforceable. The housing contract contained three references to such liens. Article IV (9) is pertinent here. It authorized the United States, NADLQ, or the mortgagee of the lease to withhold final payment to Len "until after the expiration of any period which laborers, subcontractors, and materialmen may have for filing notice of mechanics' liens."

Thus, Tropic had a mechanic's lien on NADLQ's lease and on its interest in the leasehold improvements dating back to the time that it did its work. There is no question that the lien would have been enforceable if NADLQ remained privately owned after the project was completed. We do not think that the transfer of NADLQ's capital stock to the United States changed the situation. NADLQ remained a private corporation, although serving the purpose of the United States.

It is stated in *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U.S. 381, 388 (1939), that the "govern-

ment does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." That statement was made with reference to a corporation organized under the authority of a Congressional act. It should apply with equal or greater force to a corporation organized under a state law relating to private corporations.

Once the mechanic's lien claimed by Tropic is recognized to be valid and enforceable, there can be no question about the liability of Len and the sureties to NCQ and the liability of Len to the sureties.

The liability of Len and the sureties stems from the payment bond which they furnished. NADLQ was co-obligee of that bond. The bond was conditioned on Len making prompt payment to all claimants, as therein defined, for all labor and materials furnished in the prosecution of the work under the housing contract. Tropic came within the definition of claimants. It was not fully paid. Because of the nonpayment, NCQ is now saddled with mechanic's lien. We think that the terms of the bond implied an obligation on the part of Len and the sureties to indemnify NCQ so that its lease and its interest in the leasehold improvements would be free of any mechanic's lien.

The liability of Len to the sureties is founded on an express agreement. In obtaining the bond, Len agreed with the sureties that he would indemnify them for any and all loss, costs, damages, expenses, and attorneys' fees incurred by them under the bond.

The third-party complaint of NCQ against Len and the sureties and the cross-claim of the sureties against Len were timely. Time to file an action for indemnification does not begin to run until the right to be indemnified is fixed by judgment or payment by the indemnitee. *United New York Sandy Hook Pilots Association* v. *Rodermond*

*Industries,* 394 F.2d 65 (3rd Cir. 1968). Here, the third-party action and the cross-claim were in fact brought before the right to indemnification accrued. However, they were proper under R.L.H. 1955, § 193-45, which permitted sureties and indemnitors to be interpleaded in actions to enforce mechanic's lien.

Affirmed.

*George R. Hyde,* Department of Justice (*Shiro Kashiwa,* Assistant Attorney General, *Yoshimi Hayashi,* United States Attorney, *Joseph M. Gedan,* Assistant United States Attorney, and *Roger P. Marquis* with him on the brief) for appellant Navy Capehart Quarters, Inc.

*Edmund Burke* (*Henshaw, Conroy & Hamilton* of counsel) for appellants Columbia Casualty Company and Pacific Insurance Company, Ltd.

*Kinji Kanazawa* and *Robert London* for appellant Sam Len.

*Howard K. Hoddick* (*Robertson, Castle & Anthony* of counsel) for appellee.