THE DOW CHEMICAL COMPANY AND THE CITY OF RUSSELLVILLE, ARKANSAS v. BRUCE-ROGERS COMPANY ET AL

73-118                                                       501 S.W. 2d 235

Opinion delivered November 5, 1973

*Ike Allen Laws Jr., P.A.,* for appellants.

*Williams & Gardner, James A. McLarty, Jon San-ford* and *W. H. Schulze,* for appellees.

J. FRED JONES, Justice. This is an appeal by Dow Chemical Company and the City of Russellville, Arkansas, from a chancery court decree enforcing statutory materialmen's liens filed by the appellees against the leasehold interest of Dow Chemical in land and improvements owned by the City of Russellville.

Most of the facts were agreed to by stipulation and they appear as follows: The City of Russellville sold industrial development bonds under the municipality and county development revenue bond law [Act 9 of 1960 (ex. session)] [Ark. Stat. Ann. §§ 13-1601—13-1614 (Repl. 1968)] and with the proceeds from said sale purchased land adjacent to Russellville in Pope County and leased the land to Dow Chemical Company over a period of years with option to purchase. The lease rentals to be paid by Dow Chemical were pledged to service the bonds. Upon retirement of the bonds, under Dow Chemical's option to purchase, it had a right to purchase the property including the improvements thereon for the sum of $100. Dow Chemical went into possession of the property under its lease and employed Russco Corporation and Russco Builders, Inc. in the building of two manufacturing plants on the property. These apparent two separate corporate entities will hereafter be referred to in the singular, simply as "Russco."

In the early part of 1972 Russco became unable to meet obligations and numerous liens for labor and materials were filed against the property, and numerous garnishments after judgments were filed against Dow Chemical and the City of Russellville. Russco had completed its work under its contract when the liens were filed and the judgments were obtained against it, but Dow Chemical and the City of Russellville were still indebted to Russco in the amount of $7,740. This amount still owed to Russco was far less than the amounts of the claims filed and judgments obtained against it.

As a result of the liens and garnishments, Dow Chemical and the City of Russellville filed a bill of interpleader and deposited the amount still owed to Russco into the registry of the court.

A trial on the issues resulted in a decree adjudicating the amounts of the liens as valid claims against Russco but holding that the land and improvements were public property and beyond the reach of the statutory liens. The chancellor held, however, that the leasehold interest of Dow Chemical was subject to the claims of the lien claimants. The chancellor entered judgments for the lien claimants against Russco and decreed liens in favor of the lien claimants in the amounts of their respective judgments against the leasehold interest of Dow Chemical Company. The decree provided that if the judgments be not paid within 10 days that the leasehold interest of Dow Chemical be sold at public auction, with the proceeds from the sale to be used, after the payment of all costs and expenses of the sale, to satisfy the lien claimants pro rata with the excess, if any, to be remitted to Dow Chemical Company. The decree provided for a stay bond pending appeal to this court, and such bond was filed by Dow Chemical. The appellants contend on this appeal that the chancellor erred in holding that the liens attached to the leasehold interest of Dow Chemical.

Ark. Stat. Ann. § 51-601 (Repl. 1971) provides that:

"Every . . . workman . . . or other person who shall do or perform any work to or upon, or furnish any material, . . . for any building, erection, improvement to or upon land, . . . under or by virtue of any contract with the owner or . . . his . . . contractor or subcontractor, upon complying with the provisions of this act . . . shall have for his work or labor done, or materials, . . . furnished a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same is situated. . . ."

By statute as well as case law in Arkansas, leasehold interests are subject to liens for materials and labor.

Ark. Stat. Ann. § 51-606 (Repl. 1971); *Meek* v. *Parker,* 63 Ark. 367, 38 S.W. 900. Public policy, however, forbids the attachment of liens on public buildings and land for labor and materials furnished by contractors in the construction of public facilities. *Plummer* v. *School Dist. No. 1 of Marianna,* 90 Ark. 236, 118 S.W. 1011; *Holcomb* v. *American Surety Co.,* 184 Ark. 449, 42 S.W. 2d 765. The parties in the case at bar seem to recognize the municipal immunity to liens on the fee title in this case. So, the question actually boils down to whether this municipal immunity extends to the leasehold interest owned by Dow Chemical Company.

The appellants argue that the leasehold interest of Dow Chemical is pledged toward the retirement of the $20 million bond issue and the enforcement of material-men's liens against this interest would amount to enforcing liens against public property held by the City of Russellville. The appellees argue that Dow Chemical contracted with the City of Russellville that it would not permit liens to attach to the subject property, and that appellees stand as third party beneficiaries of that contractual obligation. They also argue that appellants are estopped from claiming immunity by virtue of their failing to comply with Ark. Stat. Ann. § 51-632 (Repl. 1971) which provides as follows:

"No contract in any sum exceeding $3,000 providing. for the repair, alteration, or erection of any public building, public structure or public improvement shall be entered into by the State of Arkansas, or any subdivision thereof, any county, municipality, school district, other local taxing unit, or by any agency of any of the foregoing, unless the contractor shall furnish to the party letting the contract a bond in a sum equal to the amount of the contract."

Under the contract entered into between the City of Russellville as lessor, and Dow Chemical Company as lessee, it was provided that the lessor would obtain all necessary approvals from any and all governmental agencies requisite to the constructing and equipping of the project "and the project shall be constructed and

equipped in compliance with all state and local laws applicable thereto." The contract further provided that the lesseee shall, after occupancy of the premises under permits, approvals and authorities obtained by lessor, promptly comply with all valid statutes, laws, ordinances, orders, judgments, decrees, regulations, directions and requirements of all federal, state, local and other governments or governmental authorities, now or hereafter applicable to the leased premises. The contract provided, however, that the lessee should have the right to contest any such statutes, etc. and in such event compliance is to be postponed during the contest thereof, and:

> "[E]ven though a lien against the leased premises may be incurred by reason of such non-compliance Lessee may nevertheless delay compliance therewith during contests thereof, provided Lessee, if required, furnishes Lessor reasonably satisfactory security against loss by reason of such lien and effectively prevents foreclosure thereof."

Section 801 of the lease pertains to mechanic's liens and recites as follows:

> "After the completion of original construction and equipping, if any lien shall be filed against the interest of Lessor, Lessee, or the Trustee in the leased premises or asserted against any rent payable hereunder, by reason of work, labor, services or materials supplied or claimed to have been supplied on or to the leased premises at the request or with the permission of Lessee, or anyone claiming under Lessee, Lessee shall, within thirty (30) days after the receipt of notice of the filing thereof or the assertion thereof against such rents, cause the same to be discharged of record, or effectively prevent the enforcement or foreclosure thereof against the leased premises or such rents, by contest, payment, deposit, bond, order of Court or otherwise. Nothing contained in this Lease and Agreement shall be construed as constituting the express or implied consent to or permission of Lessor for the performance of any

labor or services or the furnishing of any materials that would give rise to any such lien against Lessor's interest in the premises."

The lease contract further provides that commencing with the completion of the project, or when the lessee takes possession if prior to the completion of the project, the lessee agrees to indemnify and save lessor harmless against and from all claims by or on behalf of any person, firm or corporation arising from the conduct or management, or from *any work* or *thing done* on the leased premises during the term.

Section 1001 of the lease provides that if the lessee shall fail to keep the leased premises lien free, the lessor has the right to satisfy such lien and charge the amount thereof back to the lessor as rent or to exercise the same rights and remedies as in the case of default by the lessee in the payment of back rent.

Under section 1501 of the lease it provides that the lessee may assign the lease or sublet the leased premises but in such event, the lessee is to remain liable and bound by the contract.

Section 1601 of the lease provides that the leasehold estate is, and shall continue to be, superior and prior to the trust indenture and any and all encumbrances, mortgages, deeds of trust and trust indentures constituting or granting a lien on the leased premises or any part thereof or interest therein.

Section 1801 of the lease provides the lease may be terminated by the lessor if:

"This Lease and Agreement or the leased premises or any part thereof shall be taken upon execution or by other process of law directed against the Lessee, or shall be taken upon or subject to any attachment at the instance of any creditor of or claimant against the Lessee, and said attachment shall not be discharged or disposed of within ninety (90) days after the levy thereof."

454

Mr. Jack Capps, acting plant manager for Dow Chemical, testified that Russco constructed the buildings involved in this case under a contract with Dow Chemical and that the contract was entered into through Dow Chemical's Houston office. He said it was his understanding that Russco was to be paid out of the bond money raised for the construction of the plant. He said that bids were taken on the job and that Russco was not the low bidder but the contract was awarded to Russco because it was a local construction company. He said that Russco was not bonded and that Dow Chemical did not generally require a bond on their contracts. He said that so far as he knows Dow Chemical was never advised by the City of Russellville, or anyone else, that there was supposed to be a bond required of a contractor on the job. He said that Russco had completely performed its contract.

Had the City of Russellville or its lessee Dow Chemical seen fit to comply with the mandatory provisions of § 51-632, *supra,* the difficulty presented in this case should never have arisen because under Ark. Stat. Ann. § 14-604 (Repl. 1968) a surety bond would have protected against the claims for labor and materials, and the provisions of the bond would have become a part of the contract. *New Am. Cas. Co.* v. *Detroit Fid. & Surety Co.,* 187 Ark. 97, 58 S.W. 2d 418; *Stewart-McGehee Const. Co.* v. *Brewster,* 171 Ark. 197, 284 S.W. 53.

In the case of *Nat'l Surety Corp.* v. *Edison,* 240 Ark. 641, 401 S.W. 2d 754, the City of Texarkana in a similar situation failed to exact a bond from the general contractor. Apparently as a device to circumvent the statute, it created a private corporation to go through the procedure of letting a contract for the construction of buildings before transferring the property to the city. In that case, however, National Surety had issued a performance bond to a subcontractor protecting the subcontractor from claims arising out of an additional subcontract. The bonding company contended it was not liable for labor and material lien claims under the general performance bond since the bond was not for the perfor-

mance of a public contract. We affirmed the liability of the bonding company and the concurring opinion pointed out as follows:

> "[T]he appellant must have known that the bond was made in connection with construction falling within the scope of Section 1 of Act 351, cited in the bond. In the circumstances the provisions of § 14-604 ought to be read into the bond, just as would have been the case if the city had complied with the law."

It would appear from the record in the case at bar, that the City of Russellville also attempted to circumvent the mandatory provisions of the statute by simply requiring its lessee, Dow Chemical, to assume all responsibility made mandatory under the statute for the protection of laborers and materialmen on municipal property not subject to materialmen's and laborer's liens. Such could have been the only reason and effect in requiring Dow Chemical to protect and hold harmless the city against unenforceable laborer's and materialmen's liens against public property. Dow Chemical agreed to assume this responsibility under its lease contract and apparently elected to forego a bond on its contractor. According to the testimony of Mr. Capps, Dow Chemical as a matter of practice simply does not require bonds of its contractors. There is no question that Dow Chemical's leasehold interest was assignable by it.

In *Grinnell Co.* v. *City of Crisfield,* 287 A. 2d 486, cited by the appellants, the Rubberset Company owned land and sold it to the city under a contract providing that the city would build a plant thereon and lease the property back to Rubberset at a specified rental over a 20 year period, at the end of which Rubberset had an option to purchase the property. In that case the city contracted with Weidemuller Construction Company (without written approval of Rubberset) to erect the building on the property. Weidemuller entered into a subcontract with Grinnell for the installation of a fire protection system for the plant and when Grinnell was not paid for the materials it furnished, it filed a mechanic's

lien on the property. The trial court held that the subcontractor Grinnell had no recourse against the city, and also held that the interest of Rubberset was subordinate to that of the city and was not subject to Grinnell's lien. The trial court sustained a demurrer filed by Rubberset. In affirming the action of the trial court, the appellate court remarked as "significant" the fact that Rubberset was not a signatory to the construction contract, as required in the lease agreement, and the court in *Grinnell* cited from a previous case as follows:

> " ' * * *[A] mechanic's lien ordinarily attaches to whatever interest the person responsible for the improvements has in the property.' "

The court in *Grinnell* seemed to place the emphasis on who was responsible for the improvements or who was the employer of the contractor and as the appellees readily point out in the case at bar, Dow Chemical was the party responsible for contracting with Russco for the construction of the buildings involved in this case.

In the case of *Tropic Builders, Ltd.* v. *United States,* 475 P. 2d 362 (Supreme Court of Hawaii 1970) Len Company and Associates was the prime contractor on a government housing project. The Aloha Company was performing construction work for Sam Len. A subsidiary of Len referred to as "NADLQ" had a 55 year lease on the site from the United States Government, and upon completion of the project the ownership stock was transferred to the federal government. Tropic was a subcontractor under Aloha and when it was not paid for its services, it filed a mechanic's lien against the *interest* of NADLQ and the improvements thereon. In the meantime NADLQ had merged into another corporate entity referred to as NCQ. The trial court held that Tropic had a valid lien against NCQ's lease on the project site and its interest in the improvements thereon. NCQ, Len, and his surety appealed and as assigned error contended that the mechanic's lien could not be enforced against property belonging to the United States or in which the United States had any interest. In affirming the trial court the Supreme Court of Hawaii said:

"The judgment recognized the existence and enforceability of mechanic's lien not on the fee simple interest of the United States but on the interest of NCQ, as successor to NADLQ, in the lease and leasehold improvements on the project site.

* * * The fact that the project site was owned by the United States in fee simple did not make NADLQ's lease and NADLQ's interest in the leasehold improvements immune from such liens. Basic Refractories v. Bright, 72 Nev. 183, 298 P. 2d 810 (1956); Crutcher v. Block, 19 Okla. 246, 91 P. 895 (1907).

* * *

It is stated in Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 388, 59 S. Ct. 516, 517, 83 L. Ed. 784 (1939), that the 'government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work.' That statement was made with reference to a corporation organized under the authority of a Congressional act. It should apply with equal or greater force to a corporation organized under a state law relating to private corporations."

In the *Crutcher* case, cited by the Hawaii Supreme Court in *Tropic Builders, supra,* the lien was against houses erected by Crutcher in a housing project on land owned by the United States Government under lease to Crutcher. In approving the liens in that case the Oklahoma Supreme Court said:

". . . Under the rule here adopted, it is immaterial that the legal title to the land in question is in the United States. The United States authorized the leasing of such land for townsite purposes, and by the terms of such a lease an estate is created. The territory and the general government are bound by their contracts the same as an individual, and it is only the estate held by the appellant that can be affected by this lien.

. . . where the government leases land for a term of years, such lease must be measured by the general law applicable to such instruments, unless exceptions affirmatively are made by the law itself. . . . "

In 53 Am. Jur. 2d, § 44, at p. 557, is found the following:

"The courts generally hold that, subject to the paramount title of the owner in fee and the conditions of the lease, a leasehold estate is subject to a mechanic's lien for an improvement erected by or under a contract with the lessee. It has been so held even though the land is the property of a municipality or of the United States. Some statutes expressly provide that the lien extends to leasehold interests." See also 57 C.J.S., § 17, Mechanic's Lien.

We are of the opinion the chancellor did not err in holding that the materialmen's liens involved in this case attached to the leasehold interest of Dow Chemical and in ordering the foreclosure of same.

The decree is affirmed.