RAWICK MANUFACTURING CO., INC.
*v.* TALISMAN, INC., et al.

CA 85-354                                        706 S.W.2d 194

Court of Appeals of Arkansas
En Banc
Opinion delivered March 26, 1986

*Ramsey, Cox, Lile, Bridgforth, Gilbert, Harrelson & Starling*, by: *Martin G. Gilbert* and *L. Layne Livingston*, for appellant.

*Highsmith, Gregg, Hart, Farris & Rutledge*, for appellee, White River Regional Housing Authority and John Baker, Executive Director.

*Cearley, Mitchell & Roachell*, by: *Michael W. Mitchell*, for appellee, Phillips Development Corp.

*Basil V. Hicks*, for appellee, Talisman, Inc.

Tom Glaze, Judge. Rawick Manufacturing Company, Inc., appeals from a chancellor's decree which found (1) that a construction project—developed by appellee Phillips Development Corporation (Phillips)—to which Rawick supplied materials was a public project not subject to a materialman's lien, and (2) that Rawick also could not recover its claim for unpaid supplies as a third-party beneficiary under a bank's letter of credit issued to Phillips to protect the purchaser of the project, appellee White River Regional Housing Authority (Housing Authority), against any liens filed under Arkansas law. We believe the chancellor clearly erred in finding the project was public and not subject to Rawick's materialman's lien.

The facts giving rise to this litigation on appeal are undisputed. On June 26, 1981, appellees Talisman, Inc. (Talisman)

and Phillips entered into a contract whereby Talisman would construct twenty-five public housing units on land owned by Phillips. The project was financed with private funds. On July 7, 1981, Phillips entered into a "Turnkey Contract of Sale" with the Housing Authority, and that contract provided that Phillips would sell the project upon its completion to the Housing Authority. On July 9, 1981, Rawick submitted to Talisman a proposal to supply materials for the project, which Talisman accepted on July 22, 1981.

Rawick delivered the last of its materials for the project to Talisman in February 1982. Phillips, by warranty deed dated March 29, 1982, and recorded April 6, 1982, conveyed the "turnkey project" to the Housing Authority. On April 7, 1982, Rawick notified Phillips that it was claiming a materialman's lien on the project, because Talisman had not paid Rawick for the materials Rawick had furnished. On July 11, 1983, Rawick filed an action to enforce the lien against appellees Phillips, Talisman, the Housing Authority and its director. After the issues were joined, the chancellor dismissed Rawick's complaint.[1]

Rawick contends the project was privately owned and funded during the period it supplied materials for the project's construction, and its materialman's lien validly attached and could not be impaired by Phillips' subsequent sale of the turnkey project to the Housing Authority. Appellees counter, arguing the evidence clearly showed the project was a *public* one and, therefore, Rawick could have no liens against the subject public improvement. We believe Rawick's argument unquestionably is correct.

Rawick's entitlement to a materialman's lien and its enforcement is rooted in both Arkansas's statutory and case law. Too, while Arkansas courts have not decided the exact legal issue presented here, the Missouri Supreme Court has, and it held contrary to the decision the trial judge reached below and to what the appellees ask us to do here. *See Home Building Corp.* v.

---

[1] While other parties and separate actions were involved at different stages of litigation between the parties, we limit our recitation of events to those matters required for understanding and disposition of the legal issues and arguments presented in this appeal.

*Ventura Corp.*, 568 S.W.2d 769 (Mo. 1978). Because the factual situation in *Ventura* is almost exactly on all fours with the one here, we discuss that holding first.

In *Ventura*, as here, a private developer, Ventura Corporation, had contracted to sell a "turnkey" housing project to a local housing authority. The project was to be constructed on property owned by the developer. There, like the case here, a material supplier was unpaid and, after the completed project had been conveyed to the housing authority, the supplier sought to perfect and enforce its lien against the property comprising the housing project. There, as here, the housing authority urged that the property was public property not subject to a mechanic's or materialman's lien. The Missouri Supreme Court disagreed, stating:

> [T]he first question to be resolved is whether this property was municipally owned property at the time the lien attached. We conclude that it was not. As previously noted, Authority became the equitable owner when it contracted to buy the tract and to receive a deed thereto after the housing units had been erected. However, Ventura retained possession of the property and under its contract with Authority was to erect housing units thereon. It retained control over the tract until the units were completed and a deed executed. It continued to be an owner which had the authority to contract for erection of improvements which resulted in the statutory lien which HBC [Home Building Corporation] claims under the provisions of Chapter 429 [dealing with establishment of mechanic's liens]. This was not municipal property at this point.

*Id.* at 775.

In the instant case, Phillips, like Ventura Corporation, was a private developer who retained ownership (1) while the housing project was constructed, and (2) after the Housing Authority acquired an asserted equitable interest in the project by virtue of its "Turnkey Contract of Sale" executed on July 7, 1981. All appellees concede the project was privately owned and funded during the entire period Rawick supplied materials to the project. As was true in *Ventura*, the project was simply not public

when Rawick's lien attached. On this point, we need only note that in Arkansas, the lien of a materialman attaches when the materials are used in the improvement, *Eudora Lumber Co.* v. *Neal & Jones*, 263 Ark. 40, 562 S.W.2d 294 (1978), and the lien relates back to the commencement of construction of the improvement. *Wiggins* v. *Searcy Federal Savings & Loan Association*, 253 Ark. 407, 486 S.W.2d 900 (1972). Again, it is undisputed that Phillips owned and funded the project when its construction commenced and when Rawick furnished supplies that were incorporated into the improvement.

■ Relevant to another argument made by appellees here, the Missouri court in *Ventura* further held the local authority's purchase of a project upon which a lien exists does not destroy that lien because the project was municipally owned. Under a Missouri statute, an authority's real property is exempt from levy and sale and no execution or judicial process can issue against the property nor can judgment against an authority be a charge or lien upon its property. *See* Mo. Ann. Stat. § 99.200 (Vernon 1971); *cf.* Ark. Stat. Ann. § 19-3022 (Repl. 1980) (identical provision).

Although an authority's real property is exempt from liens under § 99.200, the Missouri Supreme Court determined it would be unjust to permit a municipality, by purchasing property which is subject to claims for mechanic's lien rights, to defeat those liens simply because the property has been acquired for municipal purposes. In support of its holding, the court cited *Crane Creek Irrigation District* v. *Portland Wood Pipe Co.*, 231 F. 113 (9th Cir. 1916); *City of Salem* v. *Lane & Bodley Co.*, 189 Ill. 593, 60 N.E. 37 (1901); *Findorff* v. *Fuller & Johnson Mfg. Co.*, 212 Wis. 365, 248 N.W. 766 (1933); and *Meads* v. *Dial Finance Co.*, 56 Ala. App. 84, 319 So.2d 281 (Ct. App. 1975).

The Missouri court's *Ventura* decision makes sense, especially when we consider its applicability to the facts here. Not only did Phillips continue ownership and funding of the project, but also, in its July 7, 1981, contract of sale with the Housing Authority, Phillips agreed to furnish the Authority with an irrevocable, unconditional letter of credit to protect the Authority against any liens or encumbrances. Thus, contrary to its argument now, the Housing Authority clearly contemplated a lien

might ensue during the project's construction and protected itself against such an eventuality. We note, as well, that Talisman, the contractor, provided a labor and material payment bond, naming Phillips and its bank which furnished the letter of credit, the obligees under the bond.[2] Undoubtedly, the parties negotiating and contracting for the construction of this project were fully aware that a lien might attach and thereby affect clear title to the project.

Phillips and the other appellees attempt to distinguish the *Ventura* decision from the instant case by arguing that Ark. Stat. Ann. § 51-632 (Supp. 1985) requires the general contractor to provide a bond for any public project covering the contract amount of the project. This statutory bond, they argue, is required when public construction is involved because such projects are not subject to liens. In sum, appellees argue that because Talisman provided such a bond here (albeit the surety became financially irresponsible), appellees are not subject to Rawick's lien. Appellees rely on *National Surety Co. v. Edison*, 240 Ark. 641, 401 S.W.2d 754 (1966).

■ Appellees argument is wrong for at least three reasons. First, appellees' reliance on § 51-632 is misplaced, because that provision requires a bond only when the public authority enters into a contract to *repair, alter* or *erect* a public building, structure or improvement. Here, the Housing Authority entered into a contract to purchase the public housing units *after* the units were constructed. Second, the *Ventura* decision is not distinguishable based upon Arkansas's statutory bond requirements because Missouri, too, requires every contractor to provide a bond for public works of any kind. *See* Mo. Ann. Stat. § 107.170 (Vernon 1966). Third, the *Edison* case is factually nowhere close to the facts presented here or in *Ventura*. In *Edison*, the court properly concluded the project was public, not private, and held that National Surety was obligated on its bond for labor and material and machinery rentals which National Surety issued to cover "a public works project." There, the electorate of the City of Texarkana and Miller County passed a public bond issue on February 13, 1963, to erect and equip a building for manufactur-

---

[2] The surety issuing the bond was dismissed without prejudice from this cause.

ing purposes, to be located on land owned by a nonprofit corporation—Texarkana Industrial Foundation, Inc. Texarkana Industrial, however, transferred title to its land to the City of Texarkana on or about February 9, 1964, which was prior to Edison's leasing of certain equipment used in constructing the building, thereby making the equipment covered under National Surety's bond. Unlike the situation here and in *Ventura*, the project in *Edison* was publicly funded and city owned during the period Edison leased its equipment to the City of Texarkana. As suggested by Justice George Rose Smith in his concurring opinion, it appeared that the parties had created Texarkana Industrial to hold the property initially in an effort to circumvent the mandatory-bond requirement under § 51-632. Here, the parties contracted for a turnkey project which was both privately funded and owned and was never intended to become publicly owned by the Housing Authority until all of the construction was completed.

Consequently, Rawick perfected its materialman's lien in the time and manner provided by Arkansas law, and the subsequent conveyance of the project to the Housing Authority did nothing to divest Rawick of its lien.[3] Therefore, we reverse.

As counsel for the parties noted in oral argument, our holding, giving effect to Rawick's lien, renders it unnecessary to discuss and decide Rawick's right as a third-party beneficiary to enforce its claim under the letter of credit issued to the developer, Phillips. However, we do reach the argument of appellee, John Baker, Executive Director of the Housing Authority, who urges the chancellor was correct when he dismissed Baker as a party defendant. We agree that part of the chancellor's decision should

---

[3] We note here *Dow Chemical Co.* v. *Bruce Rogers Co.*, 255 Ark. 448, 501 S.W.2d 235 (1973), which cites with approval the case of *Tropic Builders, Ltd.* v. *United States*, 52 Hawaii 298, 475 P.2d 362 (1970), wherein the private prime contractor and builder held a 55-year lease and agreed to construct military housing on a site owned by the United States. From the outset, the builder's (lessee's) capital stock was to be transferred to the United States immediately upon completion of the project. The court upheld a mechanic's lien against the builder's leasehold-interest even though the government held a fee simple interest in the site. It further held the builder's subsequent transfer of its stock and ownership to the government after completion of the project did not affect the validity of the mechanic's lien which attached during private ownership.

stand, and at oral argument, Rawick came just short of conceding the point. Undisputedly, the Housing Authority purchased and owned the project, and Baker had no interest in it. Therefore, we affirm the chancellor's dismissal of Baker from this cause.

Reversed in part and affirmed in part.