The Honorable Mike Kinard State Senator P.O. Box 727 Magnolia, AR 71753
Dear Senator Kinard:
This is in response to your request for an opinion regarding the applicability of A.C.A. 22-9-203, 19-11-229, and 18-44-503 to Arkansas Public Housing Authorities ("Authorities").
You have enclosed a copy of a U.S. Department of Housing and Urban Development ("HUD") memorandum wherein it is advised that Authorities in Arkansas will not be able to implement all of the new HUD procurement rules since the Arkansas laws are more stringent. The above Code sections are then reference. You have requested an opinion "reconciling the enclosures to assure that the more liberal HUD procurement procedures may be followed by public housing authorities in this state . . ."
It must be initially noted that this office cannot offer a specific assurance in this regard since matters concerning HUD procurement requirements ultimately remain within the province of that federal agency. We will, however, address these Arkansas Code sections in an effort to determine their applicability to public housing authorities.
The case of Fagan Electric Co. v. Housing Authority, 216 Ark. 932,228 S.W.2d 39 (1950), which was cited in your correspondence, appears to be dispositive of the question with regard to A.C.A.22-9-203.
This Code section is part of the codification of Act 159 of 1949, which was at issue in Fagan, supra. The question in that case was whether the separate bidding requirements under Section 3 of Act 159 of 1949 (A.C.A. 22-9-204 (Supp 1989)) applied in the case of a contract exceeding $10,000 for the construction of a public housing project.
The Court identified the issue as "whether Act 159 of 1949 . . . applies to the appellee Housing Authority of the City of Blytheville." Fagan, 216 Ark. at 933. The Court then cited to the specific provision in question concerning the separate bidding and contract requirements for plumbing, heating, ventilating, air conditioning, electric wiring and illuminating fixtures, "whenever `the State, or any agency thereof, any county, municipality, school district, or other local taxing unit undertakes to let a construction contract involving an estimated cost of over $10,000 . . .'" Id., citing Act 159 of 1949; see also A.C.A.22-9-203 and 22-9-204.
The Court, in concluding that Act 159 did not apply, stated:
 By its terms Act 159 applies to `the State, or any agency thereof, or any county, municipality, school district, or other local taxing unit.' In order to hold that the Act applies to the appellee we must find that a housing authority is either (a) an agency of the State or (b) a local taxing unit. It is apparent from an examination of the statutes governing housing authorities that these public corporations do not fall in either classification. [Ark. Code Title 14, Ch. 169]. The statute creates a housing authority in each city of the first class and in each county, but the corporation cannot begin business until the governing body of the city or county finds by resolution that there is need for the authority to function. [A.C.A. 14-169-208.] The authority's powers can be exercised only within the city and a limited contiguous area. [A.C.A. 14-169-203 and 14-169-216.] We find nothing in the statute to indicate that the State has reserved any control over local housing authorities. The appellee is no more an agency of the State has done nothing except bring it into existence.
Nor is the appellee a local taxing unit. A housing authority may derive income from federal grants, from the issuance of bonds, from rentals, etc., but it has not been given the power of taxation. Under the doctrine of ejusdem generis the general reference to `other local taxing unit' includes only units of the same kind as those already specifically enumerated. [Citation omitted]. Here the specific reference is to counties, municipalities, and school districts, which are all governmental bodies having the power of taxation. As a housing authority is markedly dissimilar to the other local taxing units named in the statute, especially with regard to the taxing power, it is evident that the appellee is not within the reach of Act 159.
216 Ark. at 933-934.
Although the specific issue in Fagan involved A.C.A. 22-9-204, it seems clear, based upon the Court's reasoning, that an Authority would not be deemed to fall within the reach of A.C.A. 22-9-203 as well. See also, generally, Arkla Gas Co. v. City of Little Rock,256 Ark. 112, 506 S.W.2d 555 (1974).
With regard to A.C.A. 19-11-229, consideration must be given to the definition of "state agency" under the Arkansas Purchasing Law, (A.C.A. 19-11-201, et seq.), of which 19-11-229 is a part. Section 19-11-201, et seq.), of which 19-11-203(25) defines "state agency" as:
 [A]ny office, department, commission, council, board, bureau, committee, institution, legislative body, agency, government corporation, or other establishment or official of the executive, judicial, or legislative branch of this state, except exempt agencies in their procurement of items not subject to the Arkansas Constitution, Amendment 54. `State agency' includes exempt agencies when any agency or exempt agency procures any item subject to the Arkansas Constitution, Amendment 54.
Thus, the issue is whether an Authority constitutes an "establishment . . . of the executive, judicial, or legislative branch of this State." A.C.A. 19-11-203(25).
While the Fagan decision does not offer precedent in this regard, it does suggest the Arkansas Supreme Court's unwillingness to consider an Authority as "establishment" of one of the three branches of state government. This observation is compelled by the Court's statement that "[t]he [housing authority] is no more an agency of the State than is any other corporation as to which the State has done nothing except bring it into existence."216 Ark. at 934. The body of law governing housing authorities also offers some guidance wherein it reflects an apparent distinction between a housing authority and a "state public body." See A.C.A.14-169-227, 14-169-228, 14-169-231.
Of perhaps greater significance, however, is the fact that in accordance with A.C.A. 14-169-216(b):
 No provisions of law with respect to the acquisition, operation, or disposition of property by other public bodies shall be applicable to an authority unless the General Assembly shall specifically so state. [Emphasis added.]
We cannot conclude that the General Assembly has specifically stated that the Arkansas Purchasing Law shall be applicable to housing authorities. Indeed, as indicated above, every inference is opposed to the inclusion of housing authorities within the definition of "state agency" under A.C.A. 19-11-203(25), supra.
As a general matter, therefore, it is my opinion that A.C.A.19-11-229 is not applicable to Arkansas Public Housing Authorities.
With regard, finally, to A.C.A. 18-44-503 (Supp. 1989), the case of Rawick Mfg. Co. v. Talisman, Inc., 17 Ark. App. 202, 706 S.W.2d 194
(1986), offers support for the proposition that this bond requirement is applicable when an Authority enters into a contract that exceeds $20,000 for the repair, alteration, or erection of a public building, structure, or improvement. The Court rejected the appellee's reliance upon 18-44-503 in Rawick because the contract in that instance involved the housing authority's purchase of public housing units after the units were constructed. 17 Ark. App. at 207. The Court stated: ". . . appellees' reliance on 51-632 [now codified as A.C.A. 18-44-503] is misplaced, because that provision requires a bond only when the public authority enters into a contract to repair, alter or erect a public building, structure or improvement." Id. (Emphasis added).
The Court would, presumably, have concluded that 18-44-503 was applicable had the Authority contracted to construct the building.
Since this case has not been modified or repealed, it appears that authorities are considered to be encompassed within this performance and material bond requirement.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elizabeth A. Walker.
Sincerely,
Steve Clark Attorney General
[1] This Code section requires competitive bidding in order to exceed the amounts set forth therein, where the state or any agency thereof, a county, municipality, school district, "or other local taxing unit" seeks to enter into a contract for major repairs, alterations, or other permanent improvements. A.C.A. 22-9-203(a).
[2] The $10,000 threshold noted in Fagan was subsequently increased to $20,000. See Acts 1983, No. 871, 1, A.C.A. 22-9-204(a).